93 150
128 523
128 633
93 150
144 157
93 150
150 200
93 150
151 141
93 150
165 275
93 150
192 94
93 150
203 ³185
93 150
204 ¹611
93 150
f 26 SC ¹102
26 SC ²104
93 150
210 ¹488
93 150
213 ¹247
93 150
f 32 SC ¹590
93 150
f225 ¹162

## Pennsylvania Railroad Company's Appeal.

1. Although a franchise is property, and as such may be taken by a corporation having the right of eminent domain, yet in favor of such right there is no implication, unless it arises from a necessity so absolute that without it the grant itself will be defeated. It must also be a necessity that arises from the very nature of things, over which the corporation has no control, and not a necessity created by the corporation itself for its own convenience or for the sake of economy.

2. A street is a public franchise, and cannot be invaded, except by direct legislative grant.

3. By the Act of March 12th 1873, the Pennsylvania Railroad Company was authorized to lay a track on Delaware avenue as far north as Dock street, and to acquire such "ground and property, near or convenient to said avenue or street, as said company may deem necessary for depot and other railroad purposes." The company constructed a depot a short distance above the northwest corner of Dock street and Delaware avenue. To connect their line on Delaware avenue with this depot, they tore up the tracks of a street passenger railway on Dock street. It was shown that if the company had bought the property at the corner, there would have been no necessity to cross Dock street to reach their depot, but without this purchase there was no other way of reaching it, unless they removed the street railway tracks. *Held*, that under the Act of 1873 the Pennsylvania Railroad Company had no authority to interfere with the franchise of the street railway.

February 10th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY, and STERRETT, JJ. SHARSWOOD, C. J., and GREEN, J., absent.

Appeal from the Court of Common Pleas, of *Philadelphia county:* Of July Term 1878, No. 4. In Equity.

Appeal of the Pennsylvania Railroad Company from the decree of the court ordering them to remove the tracks laid by them on Dock street, in the city of Philadelphia, and to relay and restore the tracks of the Lombard and South Street Railway Company.

Bill in equity filed by the Lombard and South Street Railway Company against the Pennsylvania Railroad Company. The bill sets forth substantially: That the plaintiffs were duly incorporated with the power, among other things, of laying a single-track railway upon certain streets in the city of Philadelphia, and that by a supplement to their charter authority was given to them to extend their railway from the intersection of Front and Lombard streets, along Front street to Dock street, and along Dock street to Delaware avenue; that in pursuance of their authority they laid, in 1863, over the route granted, a railway which they have since maintained; that the defendants are also a corporation, with certain powers by virtue of their original act of incorporation, and of several supplements thereto; that by an Act of the General Assembly of this Commonwealth, approved the 12th day of March 1873, Pamph. L. 235, entitled "An Act to authorize the Pennsylvania Railroad Company to occupy certain

portions of Delaware avenue, in the city of Philadelphia, for railroad purposes, and make connections therewith, and to acquire property near or convenient to the said avenue for depot and other railroad purposes," it was provided as follows :

" Whereas, for the purpose of increasing the business facilities and commercial advantages of the city of Philadelphia, the said city has, by ordinances, authorized the widening of a portion of Delaware avenue to the width of eighty feet, and has, by a resolution of its councils, authorized the Pennsylvania Railroad Company to occupy the easternmost thirty feet thereof, as relocated and widened, for railroad purposes. Now, therefore,

" Sect. 1. Be it enacted, &c., That the Pennsylvania Railroad Company be, and is, hereby authorized to construct a double-track railroad upon the easternmost thirty feet of Delaware avenue, in said city, as relocated, between Queen and Washington streets and as widened between the north side of Dock street and said Christian street, with such connections with its Delaware river extension and turnouts as may be necessary.

" Sect. 2. And the said company is hereby further authorized to purchase, take and hold in fee-simple, such ground and property near or convenient to the said avenue or streets as the said company may deem necessary for depot and other railroad purposes : *Provided, however*, That if the said company cannot agree with the owner or owners of such land or property so to be taken as to the value thereof, or for the damage done or likely to be done to or sustained by any such owner or owners of such property which said company may enter upon and take in pursuance of the authority hereby given, or when by reason of the absence or legal incapacity of any such owner or owners no compensation can be agreed upon, the Court of Common Pleas of said city and county, on application thereto, by petition, either by said company, or owner or owners, or any one in behalf of either, shall appoint five disinterested and competent persons as viewers, residents of the said city, to assess damages, &c. * * * *Provided, however*, That when said company is unable to, or cannot agree with the owner or owners of the said land or property, then the said company may enter upon and take possession of the same, on giving to said owner or owners adequate security, by bond, for the value thereof, as the same may be determined by the said viewers ; and if such owner or owners shall refuse to receive such bond when tendered by the said company, then the same shall be presented to the Court of Common Pleas of said city, and if approved by the said court, shall be filed in the office of the prothonotary thereof, for the benefit and use of such owner or owners."

That the defendants claimed that by virtue of the provisions of the Act of 1873, the power was conferred on them to lay a double-track railroad from the terminus of their " Delaware river exten-

sion," not only on the easternmost thirty feet of Delaware avenue, but also on a line running diagonally from the easternmost part of Delaware avenue across the westernmost part of that avenue near Dock street, and along Dock street into a proposed freight depot of the defendants, situate on the north side of Dock street.

That the defendants further claimed, that by virtue of the provisions of the Act of 1873, the power was conferred on them to cross with their double-track railroad at grade the railway of the plaintiffs on Dock street, west of Delaware avenue.

That the defendants further claimed, that by virtue of the provisions of the Act of 1873, the power was conferred on them to take such portion of the franchise and railway of the plaintiffs as they, the defendants, might deem necessary, the latter making or securing compensation to the plaintiffs therefor.

That the defendants have prepared and adopted a location for their proposed railroad whereby it will run northward along the easternmost thirty feet of Delaware avenue to a point near Dock street, and thence northwestwardly on a line running diagonally from the easternmost part of Delaware avenue, across the westernmost part of the avenue near Dock street, and along Dock street, crossing the plaintiffs' railway on Dock street, west of Delaware avenue, at grade, and running into a proposed freight depot of the defendants, situate on the north side of Dock street. That by that location, the easternmost proposed rail of the defendants' railroad on Dock street would be about fifty-five feet west of the west line of Delaware avenue, on the northernmost rail of the plaintiffs' railway, and about twenty feet west of the west line on the southernmost rail of the plaintiffs' railway.

That the defendants intended forthwith to lay their double-track railroad across Dock street and across the plaintiffs' railway, in the manner described.

That Delaware avenue was a highway, and the franchise of the plaintiffs, permitting them to run to Delaware avenue, enabled them to attract the attention of travellers on that highway to their line of railway, and thus brought traffic to their railway.

That if the defendants' railroad was laid there would not be sufficient space left on the plaintiffs' railway, east of the defendants' proposed track, for a car with horses, and the plaintiffs would be thereby prevented from running their cars further east than to a point west of the defendants' proposed railroad. That the franchise of the plaintiffs would be utterly destroyed for eighty or one hundred feet.

That the defendants have no authority to lay their railroad on any part of Dock street, or to cross the plaintiffs' railway, or to take any portion of the franchise or railway of the plaintiffs.

That on the 6th of June 1874, the Court of Common Pleas of this county appointed viewers to assess the damages to be occa-

sioned by the defendants' proposed taking of the railway and franchises of the plaintiffs. That the viewers would meet on the 29th June, and might not report for sometime thereafter. The plaintiffs averred that by the Act of 1873 no power was conferred on the court to appoint such viewers. That even if the viewers were properly appointed, and the defendants' rights under the Act of 1873 were as they claimed, which the plaintiffs denied, it was incompetent for the defendants to take possession of the plaintiffs' railway and franchise, until such viewers had determined the value of the railway and franchise to be taken, and until the defendants had paid or secured to the plaintiffs the amount so fixed. That the bond for the sum of $1000 filed by the defendants was inadequate to secure the plaintiffs against the loss to be sustained if the defendants should take their railway and franchise.

The plaintiffs then prayed for the following relief: 1. That by a preliminary, and after hearing by a final, injunction, the defendants might be restrained from constructing any portion of their proposed double-track railroad on Dock street. 2. That they might be restrained from crossing the complainants' railway on Dock street with their railroad. 3. That they might be restrained from taking the plaintiffs' franchise or railway, or any part thereof, on Dock street.

An amendment to the complainant's bill averred that since the date of filing their bill the defendants had taken up the railway track of the plaintiffs on Dock street, from Delaware avenue westward, about seventy-five feet, and the defendants had laid down a double track railroad across Dock street, crossing the place where the defendants had removed the plaintiffs' railway on Dock street westward from Delaware avenue at grade; and had extended and continued their double track across Dock street to the north side thereof, and by leave of the court added this further prayer: That the defendants be enjoined and directed to restore the plaintiffs' track to the same position that it was previous to its being taken up by the defendants, and to remove the tracks of the defendants from Dock street.

The answer of the defendants in substance, averred that by virtue of the Act of March 12th 1873, entitled " An act to authorize the Pennsylvania Railroad Company to occupy certain portions of Delaware avenue, in the city of Philadelphia, for railroad purposes, and make connections therewith, and to acquire property near or convenient to the said avenue for depot and other railroad purposes," the defendants were authorized to construct a double-track railroad upon a part of Delaware avenue, in said city, as therein mentioned, between Queen street and Washington avenue, and between the north side of Dock street and Christian street, with such connections with their Delaware river extension and turnouts as might be necessary for them to make. In pursuance of which authority

they engaged in constructing a double-track railroad, to be connected with their Delaware river extension.

That by virtue of the second section of the Act of 1873, the defendants acquired certain ground, bounded partly by Delaware avenue, Water and Dock streets, and were erecting upon the greater part of the square of ground bounded by Walnut, Water and Dock streets and Delaware avenue, a freight depot for the accommodation of their business. That to make their depot available for the use of the public, it was absolutely necessary that the tracks should be connected by a suitable turnout with their double-track railroad, authorized to be laid by virtue of the first section of the act. That the second section of the Act of March 12th 1873, expressly authorized the defendants to purchase, take and hold such property near or convenient to the avenue or streets as the defendants might deem necessary for depot or other railroad purposes.

That the defendants had endeavored to agree with the plaintiffs as to the value of that portion of their track on Dock street necessary to be taken for the aforesaid turnout, or for the damages likely to be sustained by them as the owners of that property, and up to a certain time they had every reason to believe that the plaintiffs would have agreed without suit or other legal proceedings to ascertain the value thereof.

That the defendants denied that their right to lay a double-track railroad was confined to the easternmost thirty feet of Delaware avenue. For by the first section of the Act of 12th of March 1873, authorizing the said company to occupy any portion of Delaware avenue, between the north side of Dock street and the south side of Christian street, in said city, for railroad purposes, with the consent of the councils of said city, the defendants were expressly authorized, with the consent of the councils of the city of Philadelphia, to construct a double-track railroad upon any portion of Delaware avenue between the north side of Dock street and the south side of Christian street, in the said city. The defendants further showed that, by a resolution of the Select and Common Councils of the city of Philadelphia, entitled, " A resolution relative to opening Delaware avenue," approved the twenty-fourth day of June 1873, passed in pursuance of the said Act of Assembly, they were authorized to lay their double-track railroad upon Delaware avenue in such position that the centre line thereof should be forty-eight feet three inches from the westerly line of the said Delaware avenue ; and by a subsequent resolution, amendatory of the aforesaid resolution, approved July 26th 1873, the centre line of their tracks, as specified in the resolution approved June 24th 1873, was moved westward three feet nine inches, to give an equal width of roadway on each side thereof.

That the defendants have prepared and adopted a location for

their proposed railroad or main tracks, whereby the same would extend to the north line of Dock street; with these main tracks it was necessary that the tracks in their freight depot should be connected by means of a turnout, diverging from the main tracks at a point south of the south line of Dock street, passing over a portion of the westerly part of Delaware avenue and Dock street by a reversed curve, crossing the extreme ends of the plaintiffs' tracks as authorized by law, and connecting with the tracks of the defendants in their freight depot. The defendants denied that they proposed to make their connection between their main tracks on Delaware avenue and the tracks in their freight depot in the manner stated in the plaintiffs' bill.

The defendants denied that in consequence of the proposed location of their turnout, the public would not be able to reach the plaintiffs' cars except by crossing a double-track railroad.

They also denied that it was not competent for them to enter upon and take possession of a part of the plaintiffs' railway and franchises over which the proposed turnout was to be constructed, until viewers, appointed under the Act of 1873, had determined the value of the tracks and franchises so to be taken, or until they should have paid the plaintiffs the amount which might be assessed by the viewers. The proviso in the second section of the act approved March 12th 1873, expressly authorized the defendants, when they were unable to agree with the owners of property, to enter upon and take possession of the same on giving to the owners thereof security by bond for the value thereof, as the same might be determined by viewers; and if the owners should refuse to receive such bond when tendered to them, the same should be presented to the Court of Common Pleas of Philadelphia, and, if approved by that court, should be filed in the office of the prothonotary thereof for the benefit of such owners. The defendants averred that they had filed a bond in conformity with this proviso, which bond had been approved by the Court of Common Pleas, and remained in the office of the prothonotary thereof for the benefit of the plaintiffs.

The supplemental answer of the defendants set forth that since the date of filing their answer they had petitioned the late Court of Common Pleas of this county for the appointment of a jury to assess the damages which the plaintiffs had sustained by reason of the defendants entering upon and taking possession of a portion of their railway for the purpose of constructing a turnout under and by virtue of the authority contained in the Act of Assembly approved the 12th of March 1873. That after the jury had met and had been duly sworn or affirmed, the plaintiffs formally appeared by counsel before them at one or more of their meetings, and subsequently the jury had assessed the damages which the plaintiffs had sustained by reason of the said taking, at the sum of $1000,

which sum of money, with an allowance for interest and costs, was, by the leave of the said court, on or about the 18th of September 1876, after due notice to the plaintiffs, paid by the defendants into court to abide the final determination of the rights of the parties thereto.  The defendants admitted the taking of a part of the track of the plaintiffs under and by virtue of the right of eminent domain conferred upon them by the Legislature of Pennsylvania, for the purpose of properly connecting their main tracks on Delaware avenue with their main tracks in their freight depot on Dock street; but they denied that they had taken any part of the plaintiffs' tracks except in pursuance and under the authority of law as aforesaid.

An examiner was appointed and testimony taken for both complainants and defendants.  It appeared that there was a property on the northwest corner of Dock street and Delaware avenue, and that the Pennsylvania Railroad Company had considered the advisability of purchasing it.  John C. Trautwine, a civil engineer, and a witness on behalf of the complainants, testified that if the defendants had purchased said property they could have entered the block of ground at the north side of Dock street and west side of Delaware avenue, without crossing the complainants' railway; that this entrance to their depot could have been effected by means of a reversed curve, the rails of which could be laid a little east of the terminus of the Lombard and South Streets Railway, and thence curve by a reverse curve into said block near its southeast corner; that this curve, being of a greater radius, would have enabled the defendants to save motive power in running into the depot.  Mr. Strickland Kneass, the assistant to the president of the Pennsylvania Railroad Company, testified, on cross-examination by the complainants, that the advantages of holding this property had been discussed, but no decision had been arrived at as to the necessity of its purchase; that there would have been some advantages if the company could have gotten the property at a fair cost, but that it could operate the depot without it; that the reason why the company refrained from buying it was one of economy merely.  Mr. William Wharton, a contractor, who had been consulted by the defendant company in reference to this connection between their depot and the main line on Delaware avenue, while admitting that it would have been practicable to have made an entrance to the depot through this property, as suggested by Mr. Trautwine, testified that the tracks in that case would not run down the centre of the building through its entire length, and there would be too much space on one side and too little on the other for the convenient handling of freight; that it would not prevent the depot being used by the Pennsylvania Railroad Company, but that they could not transact their business in it with as much advantage as with the present arrangement of tracks.

[Pennsylvania Railroad Company's Appeal.]

The corner property not having been purchased, it was not denied that the present entrance to the depot was the only practicable one.

The court heard the case on bill, answer and proofs, and after argument, made a decree "that defendants be perpetually restrained and enjoined from constructing or maintaining any portion of their railroad on Dock street, near Delaware avenue, in the city of Philadelphia, and from constructing or maintaining their said railroad on or across the bed of complainants' railway on said Dock street in said city, and from taking, destroying, or in any manner interfering with said complainants' franchise or railway, or any part thereof. And, that said defendants shall forthwith remove their railroad tracks from said Dock street, west of Delaware avenue, in the city of Philadelphia; and forthwith relay and restore the railway of the said plaintiffs, as the same was laid at the date of the filing of the bill, and that the defendants pay costs of this cause."

From this decree this appeal was taken.

*Chapman Biddle*, for appellants.—The right of the legislature to authorize the building of a railroad upon a public road, is undoubted: Com. v. Erie & North East Railroad Co., 3 Casey 354; Danville Railroad Co. v. Commonwealth, 23 P. F. Smith 38. The property of a corporation may be taken for public use, like any other property: West Bridge Co. v. Dix, 6 How. 507; Richmond Railroad Co. v. The Louisa Railroad Co., 13 Id. 83. One railroad, in the exercise of the power of eminent domain, may take the track and property of another railroad, where the public interests demand it: Northern Railroad Co. v. Concord & Claremont Railroad Co., 27 N. H. 183; New York & Housatonic Railroad Co. v. Boston, Hartford & Erie Railroad Co., 36 Conn. 196. See also the cases collected in the notes to section 231 of Redf. on Railways, v. 2, p. 406.

The connections permitted to be made by the Act of 1873, were not only those with the Delaware River Extension, but with the property near or convenient to Delaware avenue, which might be acquired by the appellants for depot purposes, as well between the north side of Dock street and Christian street, as elsewhere.

*Mayer Sulzberger* and *Moses A. Dropsie*, for appellees.—A corporation takes nothing by a charter, except what is clearly expressed or necessarily implied: Commonwealth v. Erie & North East Railroad Co., *supra;* Pennsylvania Railroad Co. v. Canal Commissioners, 9 Harris 10; Currier v. Marietta & Cincinnati Railroad Co., 11 Ohio 228; Miami Coal Co. v. Wigton, 19 Ohio 560.

Where a charter has for its main purpose the grant of a street

to a corporation, which grant is express, there can be no implied grant of another street not named: Commonwealth *v.* North East Railroad Co., *supra;* Stormfeltz *v.* Turnpike Co., 1 Harris 555.

The right to take property for "depot or other railroad purposes," being a mere incident of the right to use the highway, there can be no implication of a right to use another highway not named, as accessary to this incidental right: Kitchen *v.* Shaw, 6 A. & E. 729.

The right to take away the franchise of another corporation, must be by express words or necessary implication: Packer *v.* Sunbury & Erie Railroad Co., 7 Harris 211 ; Market Street Passenger Railway Co. *v.* Union Passenger Railway Co., 30 Leg. Int. 154 ; Ex parte Boston & Albany Railroad Company, 53 N. Y. 574 ; Inhabitants of Springfield *v.* Connecticut River Railroad Co., 4 Cush. 63 ; Little Miami & Xenia Railroad Co. *v.* City of Dayton, 23 Ohio 510.

Without express authority, a railway company cannot cross another railway, even if they cannot reach the terminus expressly given them by law : Clarence Railway Co. *v.* Great North of England Junction Railway Co., 4 Q. B. 46.

The words of the Act of 1873, authorizing the appellants to take " ground and property," are not apt words to grant the right to take a franchise. A franchise cannot be property near and convenient to a street. These are words of corporeal location and proximity, whereas, a franchise is ideal and incorporeal. Nor can a franchise be necessary for a depot, or other like railroad purposes.

If the Act of 1873 gave the appellants the power to take the appellees' franchise by the right of eminent domain, such right and power could not be exercised by the appellants, because its exercise was not necessary.

Mr. Justice Gordon delivered the opinion of the court, March 1st 1880.

About the right of the Lombard and South Street Passenger Railway Company to have its tracks on Dock street there is no dispute. It had occupied this ground from the year 1863 by virtue of a charter granted to it by the legislature of this Commonwealth. As between itself and the Pennsylvania Railroad Company it had the prior right, and that company, the present appellant, can justify its conduct, in entering upon and removing the appellees' tracks, only by the exhibition of a better right—some superior authority. Such right and authority it claims by virtue of the Act of March 12th 1873, Pamph. L. 253. Upon the construction of this act the result of this controversy depends. By the first section thereof, the Pennsylvania Railroad Company was authorized to construct a double track railroad upon the easternmost thirty feet of Delaware avenue, in the city of Philadelphia, as relocated between Queen

and Washington streets, and as widened between the north side of Dock street and Christian street, with such connections with its Delaware river extention and turnouts as may be necessary. This section gives this company no power to go beyond the line of Delaware avenue at the northern or Dock street end of its route, for there it had neither connections nor turnouts. Were this all the defendant had to show for its right to enter upon Dock street and the appellees' franchise, the case would be a short one, for here is no warrant whatever for the assumption of such powers. But it is said that such authority is found, if not by direct grant yet by necessary implication, in the second section. That part of this section, which is material to the point under discussion, reads as follows : " And the said company is hereby further authorized to take and hold, in fee-simple, such ground and property, near and convenient to said avenue or streets, as said company may deem necessary for depot and other railroad purposes."

Now, it is said, as power is here given to take and hold ground and other property, near or convenient to said avenue or streets, for depot and other railroad purposes, it must necessarily have the right to use the adjacent street and intervening franchise in order to gain access to its depot or other property. This may be so, but this plea of necessity is so frequently used to cover infractions of both public and private rights that, prima facie, it is suspicious, and must be closely scrutinized, especially where it is used to carry corporate privileges beyond charter limits. This plea, in the first place, must be tested by the rule, now of universal acceptation, that all acts of incorporation, and acts extending corporate privileges, are to be construed most strongly against the companies setting them up, and that whatever is not unequivocally granted must be taken or withheld. This rule is to be held in all its rigor where the attempt is so to construe a corporate grant as to interfere with a previous grant of the same kind : Packer v. The Railroad Co., 7 Harris 211. It is true that a franchise is property, and, as such, may be taken by a corporation having the right of eminent domain, but in favor of such right there can be no implication unless it arises from a necessity so absolute that, without it, the grant itself will be defeated. It must, also, be a necessity that arises from the very nature of things, over which the corporation has no control ; it must not be a necessity created by the company itself for its own convenience or for the sake of economy. To permit a necessity, such as this, to be used as an excuse for the interference with, or extinction of, previously granted franchises would be to subject these important legislative grants to destruction on a mere pretence, in fact, at the will of the holder of the latest franchise.

Now, the appellant admits that it has entered upon, and, for its own uses and purposes, has destroyed part of the plaintiff's road,

but it attempts to justify its action in that it was necessary for it so to do in order to reach its depot on Dock street. But the question recurs, how came it that this warehouse was placed in such a position that it became necessary to enter upon and cross Dock street in order to reach it? The answer is found in the testimony of Mr. Kneass, the assistant of the president of the railroad company. He says, the whole block, from Walnut to Dock, and from Delaware avenue to Water street, excepting some stores fronting on Dock street, at the corner of Water street and at the corner of Delaware avenue, was purchased for the use of a freight depot, and the offices necessarily connected therewith. But we learn from the evidence of Mr. Trautwine, whose ability as an engineer no one doubts, that a practical entrance to this depot might be made either at the corner of Delaware avenue or at a short distance north of it. This, of course, would avoid any interference with the rights of the appellee, but the appellant did not purchase, or take, as it might have done, the property on the corner of Dock street and Delaware avenue, and so was obliged to enter upon, with its tracks, and cross Dock street in order to reach its warehouse. The reason why this property was not purchased or taken, is explained, by the witness first above mentioned, to have been that the necessities for that property were not imperative and the price therefor not satisfactory. He also says, further on, that the reason for not purchasing this property was one of economy merely. We thus discover that this necessity, by which the unlawful acts of this company, appellant, are sought to be excused is one of its own making—a matter of economy. It is cheaper to use Dock street, and the appellees' franchise, than to buy the property above mentioned. A defence more weak, or one more barren of equity, could scarcely be imagined. Moreover, though a franchise may be property such as a corporation, vested with the power of eminent domain, may take for its own uses, a public street or highway is not such property. It is a public franchise and cannot be violated except by direct legislative grant: Commonwealth *v.* Erie and North East Railroad Co., 3 Casey 339; Cake *v.* Philadelphia and Erie Railroad Co., 6 Norris 307. But for the invasion of Dock street the appellant has shown no legislative grant; its structures upon that street are merely nuisances; hence, it follows, that the plaintiffs' tracks were protected from disturbance, if for no other reason, because they were upon ground dedicated to public use, and upon which the appellant had no right to enter.

> The decree is affirmed, the appeal is dismissed, and the appellant ordered to pay the costs.

[Pennsylvania Railroad Company's Appeal.]

Mr. Justice PAXSON delivered the following dissenting opinion.

The decree of the court below, which this court affirms, is mandatory, and requires the appellant company to remove their railroad tracks from Dock street west of Delaware avenue. It further enjoins the appellants from constructing or maintaining their said railroad on or across the bed of complainants' (appellees') railway on Dock street.

So far as the use of Dock street is concerned the city of Philadelphia is the only party having a right to object. The city makes no objection, and this portion of the decree has nothing to support it.

The effect of the remainder of the decree is to deprive the Pennsylvania Railroad Company of the use and enjoyment of its large freight depot on Dock street, in the city of Philadelphia; that is to say, the company is enjoined from using its track connecting the depot with their road, and are commanded to take up and remove said track. As this depot is the place where an enormous traffic centres, and the improvement itself is one of vast importance to the commercial interests of the city of Philadelphia, we naturally look to see what inexorable rule of law it is that so suddenly and so rudely disturbs the large business of the city. The right should be very clear, and the injury to the complainants both serious and irreparable to justify such a decree.

The appellants laid their track on Delaware avenue, and built their depot on Dock street, under the authority conferred by the Act of 12th March 1873 (Pamph. L. 253), entitled "An act to authorize the Pennsylvania Railroad Company to occupy certain portions of Delaware avenue, in the city of Philadelphia, for railroad purposes, and *make connections therewith*, and to acquire property near or convenient to the said avenue for depot and other railroad purposes," it was enacted as follows :

" Whereas, for the purpose of increasing the business facilities and commercial advantages of the city of Philadelphia, the said city has, by ordinances, authorized the widening of a portion of Delaware avenue to the width of eighty feet, and has by a resolution of its councils, authorized the Pennsylvania Railroad Company to occupy the easternmost thirty feet thereof, as relocated and widened, for railroad purposes. Now, therefore,

Sect. 1. " Be it enacted, &c., That the Pennsylvania Railroad Company be, and is hereby authorized to construct a double-track railroad upon the easternmost thirty feet of Delaware avenue in the said city, as relocated, between Queen and Washington streets, and as widened between the north side of Dock street and said Christian street, with such connections with its Delaware river extension and turnouts as may be necessary.

Sect. 2. " And the said company is hereby further authorized to purchase, take and hold in fee-simple, such ground and pro-

12 NORRIS—11

perty near or convenient to the said avenue or streets as the said company deem necessary for depot and other railroad purposes." The remainder of the section provides for the modes of assessing the damages for property taken where the parties cannot agree upon the price.

Here is a grant of express power, as clear as language can make it, to construct the road on Delaware avenue; to purchase or take "ground and property near or convenient to the said avenue, as the said company may deem necessary for depot and other railroad purposes." The power to erect a depot near or convenient to their road being expressly given, the power to connect said depot with their road follows by necessary implication, even were the right to do so not expressly recognised in both the preamble and body of the act. And it matters not whether the depot is upon Delaware avenue; it is within the act if it is near or convenient thereto. It follows, therefore, that the argument that the depot can only be entered by a track from Delaware avenue is without support. The appellants had the right, under the Act of Assembly, to select such ground as in their judgment was suitable for a depot; they were not confined to a frontage on Delaware avenue, and they are entitled to connect the depot with their road in a suitable manner.

I do not understand it to be denied that the appellants are entitled to connect their depot with their track; but it is alleged that in doing so they cannot occupy any portion of Dock street, nor cross the track of the Lombard and South Street Road.

I have already said that the city does not object to the use of Dock street, and the Lombard and South Street Road, not being owners of the street, have no standing to object. Their objection to the crossing of their track presents another question, upon which they are entitled to be heard.

It is alleged that the crossing of the track of the street railroad is a taking of the franchise of the company (appellee), and that the Act of 1873 does not authorize such taking.

A great deal of learning has been wasted upon this point. A franchise is an intangible thing. It can neither be seen nor handled. When, therefore, we speak of taking a franchise under the right of eminent domain, we mean the taking of the property of a corporation. The invisible, intangible thing is never taken, except as the exercise of its right may be affected by the taking of its property. The track of the Lombard and South Street road was "property convenient to the said avenue," within not only the meaning but the precise language of the Act of 1873, and it was as much the right of the appellants to take it, subject to the duty of compensation, as it was to take the property upon which the depot stands. That the property of a corporation may be

[Pennsylvania Railroad Company's Appeal.]

taken for public use, with any other property, is settled by a host of authorities. Indeed, the principle is not denied.

It is said, however, that there must be a necessity for such taking. Granted. The right of eminent domain rests upon necessity and that alone. Beyond this there is no such right. And of this necessity the sovereignty taking the property must be the judge: Darlington v. The United States, 1 Norris 382. There is no distinction in this respect between individual and corporate property. The same necessity must exist in either case.

The appellants contend that it is necessary to cross Dock street and the Lombard and South Street track in order to enter their depot. The answer to this is that the necessity is self-imposed; that by taking a lot at the corner of Dock and Delaware avenue under the right of eminent domain, and tearing down the buildings, they could, by the use of a reverse curve, have entered one corner of their depot with their cars. Upon this proposition this whole case has been made to turn.

Were it not that this principle has been practically adopted by the court, I would find it difficult to treat it seriously. It amounts to just this, that there is no necessity of taking the property of A. because you might have taken the property of B. In other words, the appellants might have avoided crossing the tracks of the street-road, by taking the lot and pulling down the house at the corner of Dock street. But has the owner of that house and lot no rights? He could with equal justice and far more reason allege that there was no necessity for taking *his* property. What is there about the track of this street-road that is so sacred that other property must be taken that it may be preserved? It is property, merely, and is equally liable as other property to be taken under the right of eminent domain. I will never agree to clothe corporate property with greater sanctity than that of the individual citizen. It must share the same burdens, be exposed to the same risks, and respond in the same manner to the calls of the state.

If, however, the appellants had taken the lot at the corner of Dock street and Delaware avenue, and had thus obtained an entrance to the depot, it would not have been such an entrance as they were entitled to. It would have been an entrance at a corner of the depot and upon a short curve, while every intelligent man knows that to make a large freight depot fully available, the track should be laid as near the middle as possible. Here it was stated by the witnesses and not denied, that a corner entrance would leave " too much space on one side and too little on the other for the convenient handling of freight." I do not think the legislature which authorized this costly improvement, and the councils of the city of Philadelphia which sanctioned and invited it, intended that their grant should be belittled and defeated by

depriving the appellants of the usual and proper terminal facilities. It was not intended to give a depot which could not be used with the usual advantages. As the decree stands, however, it is impossible to use the depot to any extent. Even by the purchase of the lot referred to, it cannot be entered from Delaware avenue. It must be entered from Dock street or not at all. This is not denied by the witnesses, and is apparent from the plan submitted upon the argument.

Now, what is the grievance of the passenger railway company? It is merely that about eighty feet of their track is cut off at the east end of their road, and that passengers to reach the horse cars from Delaware avenue must cross the road of the appellants, and that this would decrease their legitimate traffic. There is no averment in the bill of any injury beyond this. There is no taking of the franchises of the passenger railway company beyond the crossing of its track at grade, nor any averment that the road cannot be operated precisely as before, and without inconvenience.

It is patent that the injury alleged is of the most trifling and inconsiderable character, and can easily be compensated in damages. On the other hand, we have not only the enormous pecuniary loss which the decree must entail upon the appellants, but also the serious interruption to the commercial business of a great city. The appellants have acted in entire good faith, and in my judgment are fully sustained by the provisions of the Act of Assembly. I do not think a chancellor should be on the alert to strike down, for light reasons, great interests, and thereby embarrass, to a great extent, the business of the country. But I do not wish to elaborate, nor have I time to do so. These observations, hastily penned, are filed as containing some of my objections to this judgment. I must also be allowed to express the fear that the clothing of the track of a horse-car railroad with such sanctity that it may not be crossed by a steam road may lead to possible difficulties in the future. Such crossings have been quite frequent in the past, and the tracks of most of the steam roads are crossed by the tracks of the street roads. It is certainly so as to the road of the appellants.