## APPEAL OF THE PENNA. R. CO.

### [PENNA. R. Co. v. DIEM ET AL.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF LAN-
CASTER COUNTY, IN EQUITY.

Argued May 20, 1889—Decided October 7, 1889.
[To be reported.]

1. The privileges conferred upon the Pennsylvania Railroad Co., by the act of March 27, 1848, P. L. 273, with relation to changes in the site of a portion of any turnpike or public highway, are, by virtue of the act of May 16, 1857, P. L. 519, exercisable by it as the purchaser and owner of the Philadelphia and Columbia Railroad.

2. The right of said company to change the site of a public highway is not confined to cases in which the highway is occupied longitudinally by the tracks of the railroad, but exists as well in cases where the construction or reconstruction of its road-bed across a highway renders such a change of site necessary.

3. It is not essential that the necessity to justify such a change should be one insurmountable by engineering skill and money; the question in any given case is, not what is possible, but what is reasonably practicable, in view of all the difficulties encountered in adjusting the two roads to each other.

4. The circumstances out of which the necessity for such a change must arise, are left by the statute to be determined in each case by the railroad company, in the first instance, and its determination of the question is conclusive, in the absence of an abuse or misuse of the power thus committed to it.

5. An abuse or misuse by the company of this discretion committed to it, may be restrained or redressed through the courts; but township supervisors have no power to revise its action and of their own motion to re-open upon the original site a road which the company has changed and reconstructed upon another location.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 61 July Term 1888, Sup. Ct.; court below, No. 2 Equity Docket, p. 291, C. P. in Equity.

On August 14, 1886, The Pennsylvania Railroad Company filed a bill in equity against Martin Diem, Henry Massey and

George W. Ramsey, road supervisors of Salisbury township, Lancaster county, averring :,

That the plaintiff company had acquired from the commonwealth under the act of May 16, 1857, P. L. 519, the Philadelphia and Columbia Railroad, with the right to straighten and improve said railroad, and, upon finding it necessary to change the site of any portion of any public road, to cause the same to be forthwith reconstructed upon the most favorable location ; that in pursuance of its powers the plaintiff had lowered its tracks through Gap village, in Salisbury township, at a point where said tracks were crossed by a public road known as the Newport road, in connection with which it had necessarily changed the site of the Newport road at said point and reconstructed the same upon the most favorable location, making a crossing over the railroad at another point by an overhead bridge ; that the defendants had declared their intention of cutting the embankment and making a grade crossing on the original site of the Newport road, which would be both unnecessary and dangerous to the travel on the public road and on the railroad ;—praying for an injunction and for general relief.

A preliminary injunction in accordance with the prayer of the bill was granted and issued.

The defendants answered, denying that the plaintiff had authority to change the site of the Newport road in the manner in which it was done, or that the change in its site so made was necessary, but admitting the other allegations of the bill.  A. P. Kramer and others, on petition to the court below, were allowed to intervene as defendants, whereupon they answered, denying the right of the plaintiff to change the site of any public road between Philadelphia and Columbia ; or that a change in the site of the Newport road became necessary ; or that the site of said road had been changed and the same reconstructed in any manner ; or that a grade crossing on the site of said road would be dangerous ; and averring that said grade crossing was necessary ; that at April Sessions 1885, of the Court of Quarter Sessions of Lancaster county, a petition was presented, at the instance of the plaintiff's solicitor, for the appointment of viewers to vacate a part of the Newport road, including the part affected by the change in plaintiff's

railroad, and that viewers and reviewers, appointed under said petition, reported against such vacation and their reports had been confirmed.

A replication to these answers having been filed by the plaintiff, the cause was referred to *Mr. David McMullen* as examiner and master, who filed his report on February 18, 1888, finding the following facts:

The Newport road passes through the village of Gap, in Salisbury township, Lancaster county, in a southeast and northwest direction. It was laid out many years ago as a turnpike road, but has been abandoned as a turnpike, and is now maintained and kept in repair by the supervisors of Salisbury township, as a township road.

The old Columbia and Philadelphia Railroad, originally built and operated by the commonwealth of Pennsylvania and sold to the Pennsylvania Railroad Company, under the provisions of the act of assembly, entitled " An act for the sale of the main line of the public works," approved May 16, 1857, and now forming part of the main line of the Pennsylvania Railroad, also passes through the village of Gap. It is laid through the village on a three-degree curve, and crosses the Newport road at the northern end of the village, at an angle of about forty-five degrees, and, as originally constructed, at grade.

The bed of the Newport road, from its summit, about five hundred and eighty-three feet south of the railroad company's right of way, descends toward the north, having a fall from the summit to the railroad company's right of way of twenty-seven feet, and from thence to the old track of about one and four tenths feet. From the north side of the old track, the Newport road descended about twelve feet, in a distance of one hundred feet, and from thence northward it continued to descend for a distance of several hundred feet, at the rate of about eight or nine feet in a hundred. The general surface of the ground, south of the railroad, rises to the west of the Newport road and falls to the east of it. The course of the railroad at the immediate point of crossing is almost due east and west.

Some time prior to the year 1885, the Pennsylvania Railroad Company undertook to improve the line of the railroad through Gap village, by lowering the grade and adding a third, and, in some places, a fourth track. To accomplish this, they aban-

doned the old road-bed, and constructed a new one very nearly parallel with the old one, and a little to the east of it. The extreme south rail of the new track is twenty-four feet north of the extreme north rail of the old track, at the Newport road crossing, and the width of the new road-bed along the line of the Newport road, from the extreme south rail to the extreme north rail, is seventy-six and three tenths feet.

The new road-bed is excavated to a depth of ten and four tenths feet below the old one, at the crossing, so that there is an embankment on the south side of the new road-bed, eight and nine tenths feet in height. On the north side of the new road-bed, the top of the rail is about one and a half feet above the surface of the Newport road.

—The master here found certain facts relating to the engineering difficulties necessarily connected with the re-opening of the Newport road on its old location, either with a grade crossing, an overhead crossing, or with a crossing under the railroad, as at present located, and proceeded:

To supply that part of the bed of the Newport road cut away and occupied by the construction of its new line, the railroad company constructed a new road-bed, beginning in the old Newport road, about thirty or forty feet north of the new railroad tracks, and running eastwardly and southeastwardly, in the same general direction as the railroad, for a distance of about eleven hundred feet, to a point nearly opposite the old passenger station, and thence westward about two hundred and fifty-five feet, crossing the railroad by an overhead bridge, and connecting with another road leading from that point westward about one hundred and forty-five feet unto the old Newport road, at what is known as the school-house property, nine hundred and seventy feet south from the starting point of said new road-bed.

After the making of this new road-bed, on July 22, 1885, a board of viewers, appointed by the Court of Quarter Sessions of Lancaster county, laid out a new road, beginning in the Newport road three hundred feet north of the beginning of the new road-bed constructed by the railroad company, and ending in a public road crossing the northwest end of Second street. This new road opens into the road-bed laid out and constructed by the railroad company at a point about four hundred and

Master's Report.

eighty-four feet from the beginning of the latter, and is laid on it from that point as far as the overhead bridge crossing the railroad. The order to these viewers included the viewing of that portion of the Newport road, between the beginning of the new road-bed made by the railroad company and the southern line of the railroad company's right of way, with a view of vacating it, but on this part of the order the viewers reported adversely.

The railroad company, after constructing the new road-bed mentioned, erected fences across the old Newport road, about fifteen feet north of the railroad track, and at the southern edge of its right of way, about one hundred and seventeen feet south of the south track. These fences still remain. The supervisors threaten to remove these fences and cut down the embankment on the south side of the railroad to the grade of the tracks, and open the Newport road across the railroad, at grade, on its old location. The railroad company, plaintiff, claims that the building of the new road-bed above described is a reconstruction of that portion of the Newport road occupied by its new tracks, under § 5, act of March 27, 1848, P. L., 273, and seek to enjoin the defendants from establishing a grade crossing on the old location.

As to his legal conclusions, the master reported as follows:

The foregoing statement of facts found in reference to this controversy, gives rise to the following questions:

1. Has the Pennsylvania Railroad Company, if it shall find it necessary, between Philadelphia and Columbia, to change the site of any portion of any turnpike or public road, to cause the same to be reconstructed forthwith, at its own proper cost, on the most favorable location and in as perfect a manner as the original road?

2. Does the construction by said company of its new road-bed across the Newport road at Gap, in the manner described in the testimony, fall within the provisions of the act of assembly authorizing such change of site?

If these two questions be answered affirmatively, then:

3. Does the construction of the new road-bed along the east side of the railroad and across the overhead bridge unto the old road leading to the Newport road, as described, constitute such

a reconstruction of the Newport road as is contemplated by the act of assembly of March 27, 1848 ?

If either of the foregoing questions be determined in the negative, the plaintiff's bill should be dismissed; if all are answered in the affirmative, the injunction should be granted.

The Pennsylvania Railroad Company was incorporated by act of assembly, approved April 13, 1846, P. L. 312, and authorized to build a railroad from Harrisburg to Pittsburgh, with such lateral roads or branches as the directors might deem advantageous, etc. The 13th section of the act provides, that whenever in the construction of said road or roads, it shall be necessary to cross or intersect any established road or way, it shall be the duty of the president and directors of said company so to construct said road across such established road or way, as not to impede the passage or transportation of persons or property along the same. A supplement to said act of incorporation, approved March 27, 1848, P. L. 273, enacts § 5, that if said railroad company shall find it necessary to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith at their own proper cost, on the most favorable location, and in as perfect a manner as the original road. And the act of March 20, 1849, P. L. 196, provides a way for compelling the railroad company to comply with the provisions of the last-named act. The act of assembly, entitled, an act for the sale of the main line of the public works, approved May 16, 1857, P. L. 519, provides in § 3, that it shall be lawful for the purchasers or their assigns, either to purchase or lease, hold and use, the railroad of the Harrisburg, Portsmouth, Mount Joy and Lancaster Railroad Company, and to straighten and improve the said Philadelphia and Columbia Railroad, and to extend the same to the Delaware river. And in § 11 it is further provided, that should any company already incorporated by the commonwealth, become the purchaser of said main line, they shall possess, hold and use the same under the provisions of this act of incorporation and any supplements thereto, modified, however, so as to embrace all the privileges, restrictions and conditions granted by this act in addition thereto; and all provisions in said original act, and any supplements inconsistent with the privileges herein granted, shall be and the same are hereby repealed.

Master's Report.

The foregoing are the charter provisions, relating to crossing or occupation of public roads by the Pennsylvania Railroad, and they appear to the master to extend all the powers and privileges granted to said company for the construction of its original road, by its charter and the supplements thereto, to its use and occupation of the Philadelphia and Columbia Railroad. There can be no doubt whatever, that if in the extension of the Philadelphia and Columbia Railroad to the Delaware river, as authorized by the 3d section of the act of May 16, 1857, the company had, in a case within the purview of the act of 1848, found it necessary to change the site of any portion of any turnpike or public road, it would have had the power under said act, and the act of May 16, 1857, to do so. But the authority to straighten and improve the Philadelphia and Columbia Railroad is granted in the same section as the power to extend it, and the provisions of the 11th section of the act of 1857 apply to both.

It was said in the argument of the case before the master that the changes in the line of the railroad between Philadelphia and Columbia, recently made, were made by the authority of the act of April 10, 1867, P. L. 993. But if this is so, it does not imply any previous want of power to straighten and improve the Philadelphia and Columbia Railroad; that power, as we have seen, was granted when the legislature authorized the sale of the road, together with the authority of the purchaser to hold, possess, and use the same, under the provisions of their act of incorporation and its supplements. But it will be observed that while the same act which authorizes the purchasers or their assigns to straighten and improve the Philadelphia and Columbia Railroad, also authorizes such purchasers, or their assigns, to purchase or lease, hold and use the Harrisburg, Portsmouth, Mount Joy and Lancaster Railroad. It gives no power to straighten and improve the latter road, nor does it give any power to widen either of said roads, nor to enter upon and appropriate lands for additional tracts, sidings, shops, depots, etc. For such purposes, the act of April 10, 1867, was required. But the authority to straighten and improve the Philadelphia and Columbia Railroad, and for that purpose to exercise all the powers over public roads granted by its charter and its supplements, was granted to the Pennsyl-

vania Railroad Company by the act of May 16, 1857, and is in no way dependent upon the act of 1867. The first question is therefore answered in the affirmative.

As to the second question: While the railroad company's track at Gap does not cross the Newport Road at right angles, it is still nothing more than a crossing. It cannot be construed to be a longitudinal occupation of the bed of the road. And, while the act of 1848 does not in terms require that the company should first longitudinally appropriate the road, in order to acquire the right to change its site, such seems to the master nevertheless to be the meaning and spirit of the act. The act of incorporation of 1846, § 13, seems to have fully provided for the crossings or intersections of any established road or way. There does not appear to have been any necessity for any further legislation on that subject.

The act of 1848 provides that if said railroad company shall find it necessary to change the site, etc. Now the word, "necessary," is defined to mean such as must be; impossible to be otherwise; not to be avoided; inevitable; impossible to be otherwise, without preventing the purpose intended, etc.; and it can readily be seen how the longitudinal occupation of a road by a railroad can give rise to such an emergency. The bed of a road cannot for any distance be occupied as a railroad and a common road both, hence the change of site becomes necessary, not to be avoided, inevitable; but in case of a mere crossing, the space necessarily occupied by both roads is so limited that with reasonable precaution it may be used for both purposes, and if the railroad crosses at such an elevation or depression as to render a grade crossing impracticable, it is always possible to construct either an overhead or undergrade crossing, and the testimony in this case shows that either may be done in the present case. It seems, therefore, to the master [that the act of 1848 was intended to meet cases where the railroad is laid longitudinally on the bed of a public road, and that a crossing, even if it be at an angle of forty-five degrees, is not such a case as will justify the exercise of the powers conferred by that act.] [1]

Such seems to have been the view of the Supreme Court of Pennsylvania, in Penna. R. Co.'s App., 115 Pa. 514, where Mr. Justice TRUNKEY, in delivering the opinion of the court, said:

" At first the act of April 13, 1846, provided that when neces-
sary to cross or intersect any established road or way, said com-
pany should so construct their road as not to impede the
passage or transportation of persons or property along said
established road or way.   This being the only provision in the
act of incorporation relative to public roads, in the face there-
of it would have been exceedingly difficult, in accord with the
rules of interpretation, to have construed the general terms
authorizing the taking of land to authorize the taking of an
established road, and laying the track thereon longitudinally.
Therefore, supplemental acts were enacted providing that when
said company should find it necessary to change the site of any
turnpike or public road, or any street, lane or alley, in any town,
borough or city, they should reconstruct the same forthwith,
on the most favorable location and in as perfect a manner as
the original road."   The second question is therefore answered
negatively, and this conclusion renders the consideration of
the third question unnecessary.

Upon all the facts in the case, the master is of the opinion
that the bill should be dismissed, and he so recommends to the
court.

Exceptions to this report, were filed with the master both
by the plaintiff and by the defendants.   Being overruled by
him and thereupon renewed in court, the court below dis-
missed the exceptions and confirmed the report, LIVINGSTON,
P. J., saying:

" A careful and full examination of the bill and answer,
answer of intervening defendants, plots and drafts, the testi-
mony presented to and passed upon by the learned master,
his report, the exceptions filed thereto, the various acts of as-
sembly, and decisions cited on the argument, has failed to
convince us that the learned master has erred with reference
to any matter complained of by the exceptants, which under
his appointment it was necessary for him to pass upon and
decide.   We therefore dismiss the exceptions and confirm the
report of the master."

A decree was then entered dissolving the preliminary in-
junction, dismissing the bill and directing that the costs be
paid by the plaintiff.[3]   Whereupon the plaintiff took this ap-
peal, assigning for error:

1. The ruling of the master set forth in the portion of his report embraced in [ ] [1]

2. The dismissal of the bill.

3. The final decree of the court in extenso.[3]

*Mr. H. M. North* (with him *Mr. E. D. North*), for the appellant:

1. Under § 11, act of April 13, 1846, P. L. 312, incorporating the plaintiff company, it has power to determine the lines, curves and gradients of its road, and to lay the same upon and across all streets, public and private roads and lands of every description, except where forbidden: Commonwealth v. Erie etc. R. Co., 27 Pa. 339. This privilege is accompanied by certain duties, one of which is that in crossing a public road the company must not destroy it. In fulfilling this obligation it may elevate the public road and substitute a bridge, or depress it under the railroad, or change it to a new location, and the changes necessary and proper are to be determined by the company. It is believed that this power exists independent of the act of March 27, 1848, P. L. 273; and the act of March 20, 1849, P. L. 196, provides a proceeding for determining whether it has fulfilled its duty in these matters.

2. The company having purchased the Philadelphia and Columbia Railroad and made it a part of its through line, the same as if built under its original charter, and the act of May 16, 1857, P. L. 519, having conferred the power of straightening and improving the line, this power and the responsibility and proceedings connected therewith were all to be under the original charter and supplements: Pittsburgh v. Penna. R. Co., 48 Pa. 355. These provisions governing the plaintiff company, as copied into the general railroad act of February 19, 1849, P. L. 79, were held in North Manheim Tp.'s App., 22 W. N. 149, to apply to an appropriation of a public road that was not longitudinal.

3. The power to determine the necessity of the change of site of a public road rests with the officers of the company, and their determination is not reviewable unless there be gross abuse of their discretion: Commonwealth v. Erie etc. R. Co., 27 Pa. 339, 373, 374; Pittsburgh v. Penna. R. Co., 48 Pa. 359; Parke's App., 64 Pa. 137, 139–141; N. Y. etc. R. Co. v.

Young, 33 Pa. 182; Struthers v. Railroad Co., 87 Pa. 282, 286. There is no evidence of any abuse of discretion in this case. The master and court below were in error, therefore, in holding that the old road was not vacated by the substitution of the new road which the plaintiff constructed to take its place : Phillips v. Railroad Co., 78 Pa. 177, 181.

*Mr. G. C. Kennedy* and *Mr. George Nauman*, (with them *Mr. H. C. Brubaker*), for the appellees :

1. There is here no question of a change of site, but a case of a deliberate confiscation and closing up of a public highway. If the plaintiff has the power to do this, so has every railroad company in the state, as they all have practically the same powers under the general railroad law, that the plaintiff has under its charter. Hence, if this case is decided in favor of the appellant, any highway in the state that is crossed by a railroad may be vacated, under the pretense of widening, straightening or improving the latter.

2. The appropriation of this road by the plaintiff could not be made under the power to straighten and improve its tracks. In making such improvements it relies upon the act of April 10, 1867, P. L. 993. That this act does not authorize such an appropriation is shown by Penna. R. Co.'s App., 115 Pa. 514. The power to change the site of public roads, so far as the plaintiff company is concerned, has been construed by the legislature in the act of March 20, 1849, P. L. 196, and limited to the original construction of the railroad.

3. But, whether this be so or not, the making of a crossing does not authorize the vacation and confiscation of a public road. The decisions in Pennsylvania, so far as they go, are entirely inconsistent with the position assumed by the plaintiff : Pittsb. etc. Ry. Co. v. Commonwealth, 101 Pa. 192; Commonwealth v. Erie etc. R. Co., 27 Pa. 339: Danville etc. R. Co. v. Commonwealth, 73 Pa. 29; Phillips v. Railroad Co., 78 Pa. 177 ; North C. Ry. Co. v. Commonwealth, 90 Pa. 300 ; Penna. R. Co.'s App., 115 Pa. 514; Penna. R. Co.'s App., 93 Pa. 159; Commonwealth v. Railroad Co., 117 Pa. 637. And see Greenwich v. Warren, 24 N. J. Eq. 217.

OPINION, MR. JUSTICE WILLIAMS :
This case presents a question which is both interesting and

important. The tracks of the Pennsylvania Railroad through the village of Gap in Lancaster county are upon the slope or side of a hill. Prior to 1885 the company undertook the improvement of its line, and the village of Gap was one of the places where it was sought to reduce its grades. For this purpose the tracks were put upon a new location further down the face of the hillside, and the road-bed was dropped still lower by means of a considerable excavation. The Newport road crossed the tracks as originally located at grade. The new tracks were twenty-four feet northerly from the old, and the excavation left a perpendicular bank on the upper or southerly side nine feet high. The site of the Newport road was thus occupied and removed by the railroad company, and the road made impassable. The railroad company proceeded at once to supply the place of the piece of road thus occupied by them, by building an overhead crossing at a convenient point near by, and connecting the Newport road with it. The new road with the overhead crossing has been in use by the public for several years. The supervisors of the township now propose to excavate an approach to the new tracks on the line of the Newport road, and so open a grade crossing for public use. This bill was filed to prevent such action on their part. It avers in substance that it became necessary to change the site of the Newport road, in consequence of the improvement of the railroad track; that such change was made by the company at its own cost; that the new or substituted road is and has been for some time in actual use by the public; and that the proposed action of the supervisors would interfere with the safety of trains upon the railroad, and open to the public a crossing that would be both difficult and dangerous, without any legal authority therefor.

The important facts are not in controversy. The answer concedes and the master finds that the railroad company built a new road with a safe overhead crossing to take the place of the old road; that the new road is, and has been since its construction in use by the public, and that the crossing at grade now proposed would be dangerous. The master was of opinion however, and so reported, that the plaintiff's right to the relief sought depended upon the answers to be given to two questions. These he stated and answered as follows :

"1. Has the Pennsylvania Railroad Company the right, if

it shall find it necessary, between Philadelphia and Columbia, to change the site of any portion of any turnpike or public road, to cause the same to be reconstructed forthwith at its own proper cost on the most favorable location, and in as perfect a manner as the original road?" This question he correctly answered in the affirmative, holding that the company had the power in a proper case to take possession of a public road, and upon such taking to reconstruct it on other ground. The second question is, " 2. Does the construction by the company of its new road-bed across the Newport road at Gap in the manner described, fall within the provisions of the act of assembly authorizing such change of site?" This he answers in the negative, upon the ground that a crossing can under no circumstances justify a railroad company in changing the site of a public road, but that the public road must be carried over or under the railroad, where a crossing at grade is not practicable, without regard to the difficulty or cost of such work, and without reference to the public convenience or safety. The proposition is maintained that the right to change the site of a public road can be exercised only when the bed of the road is occupied longitudinally by the tracks of the railroad.

This is our question. The legislative provision on which it depends is in these words: " That if said railroad company shall find it necessary to change the site of any portion of any turnpike or public road, they shall cause the same to be reconstructed forthwith at their own proper expense on the most favorable location, and in as perfect a manner as the original road." The question then in every case is whether a change of the public road is necessary. This is left by the statute to be determined in the first instance by the railroad company. The circumstances out of which the necessity must arise are not enumerated. Whether a longitudinal occupancy of the road-bed for any distance however small will create a necessity, or whether nearness to the public road, a deep excavation across it, a cutting away of the hillside under it upon a diagonal line to a depth of nine or ninety feet, will justify the removal and reconstruction of the road, is a question to be settled in the exercise of a sound discretion by the railroad company. Unless the power thus committed to the company is abused, or used without due regard to the public interests, it is conclusive

of the question. If it is abused, such misuse of it may be restrained or redressed through the courts. Ordinarily the necessity grows out of the appropriation longitudinally of a portion of the public road for the tracks of the railroad, but we cannot say that this is the only way in which a necessity can arise. Nor is the necessity which presents itself in any given case to be an insurmountable one, in order to justify the reconstruction of the road. It is difficult to set any limits to what is possible to engineering skill and money in this age of marvels.

The question in any given case is not what is possible, but what is reasonably practicable. In the case before us, it appears by the findings of the master that the railroad company encountered the following difficulties in determining what to do with the Newport road. To make a crossing at grade would require a through cut eight feet deep at the side of the railroad, to be continued back from the road fully two hundred feet. At a distance of one hundred feet from the railroad this cut would be five feet deep on one side with a bank twelve feet high on the other. The descent along its whole length would be at the rate of seven and a half feet in a hundred. It would cross the tracks on a diagonal line, the tracks being on a three and a half degree curve. Both the curve in the railroad and the cut for the public road would contribute to make the crossing dangerous to the public and inconvenient to the railroad company. To cross by an overhead bridge would require a structure three hundred and thirty feet long with a grade of fifteen feet in a hundred. An underground crossing would require an excavation under the tracks fifteen feet in depth, with an approach from the south of six hundred and fifty feet, and one from the north of three hundred and seventy-five feet, with an average grade of eight feet in a hundred. The company decided that neither of these was reasonably practicable, but that it was necessary, in view of all the circumstances, to remove the road a short distance and re-construct it on better ground, with better grades and with an overhead crossing.

This was done. If this was an unauthorized exercise of power, the objection should have been made before the new road was laid out by the court and the work of re-construction completed by the railroad. It might be raised in a proper way even now, but until it is raised and disposed of in an orderly

and legal manner, the decision of the railroad company must stand. The supervisors are proposing on their motion and by their own authority to restore the crossing which has been supplied. They would overrule the decision of the railroad company on the question of necessity which the act of assembly left to it for determination, and proceed to undo what it has done in the premises, without the aid of legal process or the judgment of the courts. This will not do. The supervisors may as well open a grade crossing at any other point on the line of the railroad, without authority, as to do it here. The railroad company necessarily appropriated a part of the Newport road in the improvement of its tracks. It decided that it was reasonably necessary to remove or re-construct that part of the road. They sought and obtained the authority of the Court of Quarter Sessions of Lancaster for laying out and opening the new road. They did the work of re-construction at their own cost and built a safe overhead crossing at a convenient point. The public took possession of the re-constructed road and has used it for several years. These proceedings have the effect of informally vacating so much of the old road as is thus supplied, and there is no power in the supervisors to revise and reverse all that has been done and restore the supplied crossing.

The cases cited by the defendants in error are not in point. Penna. R. Co.'s App., 93 Pa. 150, was a case in which a railroad company sought to justify the appropriation of a street without direct legislative authority therefor. The same is true of the Penna. R. Co.'s App., 115 Pa. 514, and the rule was stated to be that the legislature may authorize a railroad company to lay its tracks in a public street, but that without such authority it has not the right to appropriate the highway in that manner. The precise question now decided is not, so far as we are aware, considered in any of our own cases, nor has the research of counsel brought to our attention any decided case in which it is ruled.

      The decree is reversed, and the preliminary injunction restored at the costs of the appellees.

Mr. Justice MITCHELL dissented.