Sarah L. Bigler, Executor, Appellant, *v.* Pennsylvania Canal Company.

*Canals—Change of bed of canal—Act of March* 17, 1869.

The purpose of the act of March 17, 1869, P. L. 12, relating to the straightening of canals, was not only to permit changes of location by straightening so as to facilitate transportation, but also to better secure the safety of the persons and property of those who had occasion to cross the canal.

Under the act of March 17, 1869, P. L. 12, a canal company may condemn land so as to enable an overhead crossing to be built over both a canal and a neighboring railroad, although the removal of the canal and the construction of the railroad in the old canal bed is included in the improvement; the fact that the railroad company which owns the stock of the canal company, makes the contract with the city for the improvement,

·does not render the corporate action of the canal company in condemning the land illegal.

*Equity—Jurisdiction—Discretion.*

Courts of equity hesitate to, and generally will not, interfere with acts involving in their performance scientific and professional judgment. They will however interfere if a discretionary act involving scientific skill is arbitrarily or unnecessarily exercised to the injury of the property of another.

A court of equity will not interfere to enjoin the construction of an overhead crossing by a canal company where there is no evidence tending to show that the plan adopted to construct the overhead crossing is not good engineering, and is not in the honest judgment of the directors of the company the best to accomplish the purpose.

*Equity—Injunction—Balance of injury.*

Where a case is doubtful on its facts, or the injured party has in some particulars, condoned the wrong, or has not been very vigilant in asserting his right, or the injury complained of be a trifling annoyance, and such like cases, the balance of injury principle may be invoked to stay the hands of the chancellor; but a wrongdoer, although he may be inconvenienced, can never be injured by being compelled to make restitution; therefore an undoubted substantial injury to a right of property will be redressed in equity where there is no adequate remedy at law, without regard to the inconvenience or damage the wrongdoer may sustain.

Argued June 2, 1896. Appeal, No. 15, May T., 1896, by plaintiff, from decree of C. P. Dauphin Co., Equity Docket No. 99, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction to restrain the taking of land. The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree dismissing bill.

*Lyman D. Gilbert*, of *Weiss & Gilbert*, with him *Casper S. Bigler*, for appellant.—A chancellor sitting in equity with the master's report in his hand, can agree or disagree with the master both as to the findings of fact and the application of the law. But he cannot do this as a matter of discretion or grace. Neither can he balance the injuries or benefit that might accrue from his action: In re Report of County Auditors, 1 Woodw. 270; Walters v. McElroy, 151 Pa. 549; Evans v. Reading Chemical Fertilizing Co., 160 Pa. 209; Hennessey v. Carmony, 25 Atl. Rep.

374; Murdock's Case, 20 Am. Dec. 389; Grey v. R. R., 1 Grant, 412; Leibig v. Ginther, 1 Leg. Chron. 203; Frankford Turnpike Co.'s App., 11 W. N. C. 184; Richard's App., 57 Pa. 105; Mayer's App., 73 Pa. 164; Harkinson's App., 78 Pa. 204; Penna. Lead Co.'s App., 96 Pa. 123; Gatzmer v. St. Vincent Society, 147 Pa. 313; Pile v. Pedrick, 167 Pa. 296.

Injunction is the appropriate remedy for the prevention of trespasses and nuisances which, by reason of the persistency with which they are repeated, threaten to become of a permanent nature: Commonwealth v. Pittsburg & Connellsville Railroad Company, 24 Pa. 159; Sheetz's App., 35 Pa. 88; Stewart's App., 56 Pa. 413; Masson's App., 70 Pa. 26; Allison's App., 77 Pa. 221; Bitting's App., 105 Pa. 517; Walters v. McElroy, 151 Pa. 549.

The foundation of the right of eminent domain is necessity. The reason utterly fails when one sovereignty proceeds to take land for another sovereignty: Darlington v. United States, 82 Pa. 382; Lodge v. Phila. & Wil. R. R., 8 Phila. 345; Penna. R. R. Co.'s App., 128 Pa. 521; Robinson v. R. R., 161 Pa. 570; 6 Am. & Eng. Ency. of Law, 540; R. R. v. Scully, 16 W. N. C. 213.

*L. W. Hall*, of *Hall & Jordan*, for appellee.—Relief will be withheld where the benefit to the public to be derived from the existence of the thing complained of outweighs the private inconvenience, since the injury to one family or person will not be allowed to counterbalance the public benefit: 1 High on Injunctions, p. 479; Attorney General v. Perkins, 2 Dev. Eq. 38; Attorney General v. Lee's Heirs, 3 Ired. Eq. 302; Wilder v. Strickland, 2 Jones' Eq. 386; Fisher v. Board of Trade, 80 Ill. 85; 10 Am. & Eng. Enc. of Law, 790; 1 High on Injunctions, sec. 745; Parker v. Winipisiogee L. C. & O. W. Co., 2 Black. 545; Williams v. Jersey, 1 Cr. & Ph. 91; Great Western R. R. v. Oxford R. R., 3 De G. M. & G. 341; Doran v. Carroll, 2 Irish Ch. 379; Morris C. & B. Co. v. Fagin, 7 C. E. Green, 430; 2 High on Injunctions, sec. 1, 194.

An injunction will not be granted where it appears that it would result in a great and irreparable injury to others: 2 High on Injunctions, par. 1, 229; Delger v. Johnson, 44 Cal. 182.

Equity requires diligence on the part of the complainant and

especially in cases of injunction : 1 Beach on Mod. Eq. Jur. sec. 17 ; White v. Schlecht, 9 W. N. C. 77 ; Dey v. Telegraph & Telephone Co., (N. J.) 5 Eastern Rep. 768 ; Johnson v. Mining Co., 148 U. S. 360 ; 2 Pomeroy's Eq. Jur. sec. 817 ; Ash v. McGill, 6 Whart. 391.

A court of equity has no jurisdiction to determine the legal title to real estate and the right of possession thereunder : North Penna. Coal Co. v. Snowden, 42 Pa. 488 ; Tillmes v. Marsh, 67 Pa. 507 ; Washburn's App., 105 Pa. 480 ; Penna. Canal Co. v. Middletown & Harrisburg Turnpike Co., 1 Dist. Rep. 663 ; Datz v. Phillips, 137 Pa. 203.

An injunction is not allowable or maintainable after the court has approved and ordered a bond to be filed to secure the landowner for damages to his land : Wadhams v. R. R., 42 Pa. 303 ; Fries v. R. R. & Mining Co., 85 Pa. 73 ; Hoffman's App., 118 Pa. 512 ; Wallace v. R. R., 138 Pa. 168; Keller v. R. R., 31 W. N. C. 11; R. R. v. Peet, 31 W. N. C. 404.

When a railroad company has taken possession of land and constructed its road upon it, but has made no compensation to the landowner, equity will not permit it to be disturbed in its possession, if in taking possession it has acted in good faith under the acquiescence of the owner, or by mistake as to the property or as to the validity of the authority given it to occupy, provided it makes compensation, if equity shall so require : R. R. v. Kamlah, 28 Am. & Eng. R. R. Cases, 250 ; Rudolph v. R. R., 166 Pa. 430.

An injunction will only lie where the injury done or threatened is irreparable : Kerr on Injunctions, 14 ; Beach on Mod. Eq. Jur. sec. 739 ; Hodge v. Giese, 11 Atl. Rep. 484 ; Segura v. Debaillon, 20 Rep. 266 ; McHenry v. Jewitt, 14 N. Y. 695.

The fact that a railroad company has located its line across certain land is prima facie proof that it is necessary for it to take that land for the use of the road : O'Hara v. R. R., 28 N. E. Rep. 923 ; R. R. v. Peet, 152 Pa. 488 ; Lynch v. Inhabitants of Brookline, 37 N. E. Rep. 437 ; Lodge v. R. R., 8 Phila. 345.

One corporation under its right of eminent domain may appropriate lands for the use of another company : Application of S. I. R. R. Co., 27 Am. & Eng. R. R. Cases, 348 ; Freeland v. R. R., 66 Pa. 91 ; Miles on Eminent Domain, 2d. ed. 63.

OPINION BY MR. JUSTICE DEAN, July 15, 1896 :

The Pennsylvania Railroad and Pennsylvania Canal are located closely along side each other through the city of Harrisburg ; the streets of the city were carried over the canal by bridges and by grade crossings over the railroad ; the structures over the canal were narrow and insufficient for the public ; the crossings over the railroad were highly dangerous to both the public and the transportation company ; the growth of the city in population and cumulation of traffic upon the railroad only increased the inconvenience and danger to the public. Under these circumstances, impelled by public demand, and acting under a sense of public duty, in 1887, the city councils, with a view to abolishing grade crossings, under an arrangement with the railroad company, passed an ordinance to abolish them by overhead bridges spanning both canal and railroad at three points—Fourth and Chestnut streets, Paxton street and Dock street. The declared purpose of the ordinance, as embodied in it, is "to promote the safety of persons and property within the city, and is deemed expedient for the public good." The bridges were to be erected by the railroad company at its own expense, and were thereafter to be taken charge of and maintained by the city. The railroad company at once proceeded to construct the bridges. Owing to the peculiar conformation of the line of the canal, its relative location to the railroad and to the streets, as an engineering problem, the company determined the improvement could be properly and most advantageously made by straightening, thereby moving at one point the bed of the canal about eighty feet for a distance of twenty-five hundred feet, and permitting the removal of the railroad tracks to this vacated bed of the canal. This involved the appropriation by this canal company of a little over one and a half acres of plaintiff's land. This land, though cultivated to some extent, was not otherwise improved. The canal company, in the exercise of its alleged right of eminent domain, and with the desire to aid in the improvement of overhead crossings, after unsuccessful efforts to agree with plaintiff on compensation for damages, filed a bond with sureties in sum of $20,000, conditioned for payment of damages ; thereafter the work at large outlay was proceeded with to completion.

Soon after the commencement of work, however, plaintiff

filed this bill for an injunction to restrain defendant from appropriating the land. The defendant filed answer asserting its right. The material averment of the bill is the want of authority in defendant to appropriate her land under the exercise of its right of eminent domain. The issue was referred to George Kunkel, Esq., as master, to find facts, conclusions of law, and suggest decree. He had many sittings during the eight years the suit was pending, took much testimony, and finally, on March 29, 1895, made his report. He finds as a fact that the change of location by defendant of its canal bed was not made with a view to increase its facilities for navigation, but was done to enable the Pennsylvania Railroad Company to improve its passenger stations and track bed and avoid grade crossings within the city of Harrisburg; therefore, its attempt to appropriate plaintiff's land was unlawful. He suggests that an injunction issue as prayed for. The learned judge of the court below declined to adopt his suggestion for a decree, because at the date of hearing the improvement had been made at large expense, and both the public and the two companies were then in full enjoyment of the same; therefore, to grant the injunction would cause greater damage, oppression and inconvenience than to refuse it, and he accordingly dismissed the bill without prejudice to plaintiff in her legal remedy.

From this decree the plaintiff appeals, assigning for error the refusal of the court to adopt the report of the master and award the injunction.

We do not concur in the legal conclusion of the master, nor do we adopt the decree suggested by him; we affirm the decree of the court below, but not the reason therefor given by him.

The act of the canal company in changing the bed of its canal was under the authority of the first section of the act of 1879, as follows:

" It shall and may be lawful for any railroad, canal and slack-water navigation company, now or hereafter incorporated by any law of this commonwealth, to straighten, widen, deepen, enlarge and otherwise improve the whole or portions of their lines of railroad, canal and slack-water navigations, and the approaches, crossings, sidings, aqueducts, piers and structures thereof, and make new feeders, whenever in the opinion of the board of directors of any such company the same may be nec-

essary for the better securing the safety of persons and property and increasing the facilities and capacity for the transportation of traffic thereon, and for such purpose to purchase, hold, use, or enter upon, take and appropriate land and material, provided, however, that before any such company shall enter upon or take possession of any such land and material, they shall make ample compensation to the owner or owners thereof, or parties interested therein, or tender adequate security therefor."

The learned master, it seems to us, takes too narrow a view of the scope of this section. The purpose of it was, not only to permit changes of location by straightening so as to facilitate transportation, but also to better secure the safety of the persons and property of those who had occasion to cross the canal. The physical form of great highways of commerce, such as canals and railroads, necessarily involves the contemporaneous construction and maintenance thereafter of public crossings, for the convenience and safety of that part of the public not directly concerned in the transportation of passengers and freight. All the legislation on this subject, from the acts authorizing the construction of the Pennsylvania Canal to the general act of 1849 and its supplements, makes provision for crossing the lines of canals and railroads by the public. It was never intended that one highway should supersede or obstruct unnecessarily the other and the rights of the public who use both were protected. It is here conceded that if defendant had taken this land for the purpose of directly facilitating navigation the appropriation was authorized; but there is nothing in the act which limits the right to this particular purpose. " Whenever in the opinion of the board of directors the same may be necessary for securing the safety of persons and property " there may be an appropriation. The legislature well knew that many of these improvements had been located at an early day in small towns and sparcely settled neighborhoods; that the growth of towns into large cities, rural regions into villages and thickly settled communities would, in the interests of the public, often compel changes in the beds of canals and railroads; hence the enlargement of the right of eminent domain; it was not limited to the first appropriation. The purpose of this appropriation is thus stated by Thomas T. Wierman, engineer of defendant.

"It was a public improvement to the city and community, and the canal as well. The straightening of the canal and railroad brought them close together and permitted bridging them both to avoid grade crossings at the streets, and this was the only way to effect that much needed improvement. I consider the straightening of the canal and railroad through Harrisburg the greatest public improvement that has ever been made here for all interests; that for the canal, railroad and the public."

There is not a word of evidence to contradict this. The master in one part of his findings of fact states: "The change was made, not for the purpose authorized by the statute, but for the purpose of giving to the railroad company the old bed of the canal." This is not a full statement of the facts. He should have gone further and stated that for purpose of constructing overhead crossings for both canal and railroad, sufficient to accommodate safely the public, the canal and railroad company moved their beds further south; defendant's purpose in moving was not to relinquish its old bed to the railroad company, although that was the effect of it; its purpose was to adopt a new bed that the overhead crossings could, in capacity and convenience, be constructed over both. The mistake is in calling that a purpose which was a mere incident of the real purpose, the avoidance of grade crossings. We do not consider it material that the agreement with the city was made with the railroad company and the change of bed was made at the suggestion of the railroad company. If the agreement had been expressly made with both companies to join in an improvement to provide overhead crossings, the right of the canal company to exercise its lawful corporate powers, as it did exercise them, would have been undoubted; but the fact that the railroad company directly made the agreement with the municipality does not render the corporate action of the canal company illegal. Defendant chose to aid the municipality and another private corporation in constructing a public improvement, which it could, in the absence of the other private corporation, have agreed with the city to construct as it was constructed; this, in no sense, proves it was not acting by authority of the statute from which its power was derived.

It is argued by appellee's counsel that a relocation of the canal bed was in the discretion of the board of directors under

the act, and is not reviewable by the courts. This is stating the proposition too broadly. It is a settled rule that courts of equity hesitate to and generally will not interfere with acts involving in their performance scientific and professional judgment; it is just as well settled, however, that they will interfere if a discretionary act involving scientific skill is arbitrarily or unnecessarily exercised to the injury of the property of another. But it is a waste of time to discuss further this proposition, because there is no evidence tending to show the plan adopted to construct the overhead crossings was not good engineering, and was not, in the honest judgment of the directors, the best to accomplish the purpose.

The court below, on a balancing of the injuries and benefits that would result from an injunction, concluded to refuse it, because such refusal would occasion less hardship than granting it. In support of this principle many authorities are cited. None of the cases warrants the adoption of the rule as a basis for such decree in this case. The master's findings of fact place in plaintiff a clear legal right to the property taken, and his conclusions of law are that the taking by defendant was wholly without authority. If these conclusions be correct, no injury, in the legal sense of that term, could result to defendant from restoring to plaintiff her right; the wrongdoer, although he may be inconvenienced, can never be injured by being compelled to make restitution. Where a case is doubtful on its facts, or the injured party has, in some particulars, condoned the wrong, or has not been very vigilant in asserting his right, or the injury complained of be a trifling annoyance, and such like cases, the balance of injury principle may be invoked to stay the hand of the chancellor. But all our Pennsylvania cases hold an undoubted substantial injury to a right of property will be redressed in equity where there is no adequate remedy at law, without regard to the inconvenience or damage the wrongdoer may sustain: Lead Co.'s Appeal, 96 Pa. 116; Price v. Grantz, 118 Pa. 402; Walters v. McElroy, 151 Pa. 549; Evans v. Fertilizing Co., 160 Pa. 209. Here, the defendant appropriated one and a half acres of plaintiff's land; if this was unauthorized under its right of eminent domain the property damage was of that character and the wrong of that nature that equity was bound to interfere.

We do not, therefore, concur with the court below in its reason for dismissing the bill. We are of the opinion, however, that defendant had full power, under the authority granted it by the commonwealth, to straighten and change its canal bed, as here proved for the purpose here clearly shown. Therefore the decree is affirmed.