## Scranton Gas & Water Company, Appellant, *v.* Delaware, Lackawanna & Western Railroad Company.

*Railroads—Straightening line—Eminent domain—Water company—Act of March* 17, 1869, *P. L.* 12.

1. Under the Act of March 17, 1869, P. L. 12, a railroad company may condemn land to straighten its line, although there may be a departure from the old line at one point of 2,500 feet, if it appear that the improvement will shorten the line by half a mile and reduce a curvature by 323°. In such a case it is of no consequence that the railroad company had in mind other advantages, or that these were the controlling considerations, without which the improvement would not have been entered upon.

2. The inquiry in all such cases must be not into the conduct of the

company, but into the rights conferred upon the company by law. If authorized by its charter to do the things complained of, the authority of the court is at an end, no matter what latent design may be developed.

3. Where the minute of the executive committee of the railroad company shows that the effect of a condemnation of particular land, and the relaying of tracks thereon, will result in a substantial reduction of curvature, and a substantial shortening of the line, it is immaterial that the minute may have described the change as a "relocation." If the minute is subsequently ratified and adopted by the board of directors, the proceeding is regular.

4. The law commits to the board of directors of a railroad company the determination of the question of the necessity of condemning additional land under the Act of March 17, 1869, P. L. 12, for straightening and widening the road. A determination by the board that the proposed change is necessary for the purposes indicated in the act is conclusive, and if such determination is reached in good faith, the court has no supervisory power over it.

*Railroads—Eminent domain—Condemning land of another public service company.*

5. Property devoted to public use including a franchise, is subject to eminent domain, and may be taken for other public uses, but it cannot be taken without legislative authority expressed in clear terms, or by necessary implication. There must, however, exist a necessity for the taking, and such necessity must be one that arises from the nature of things, over which the corporation has no control; it must not be a necessity created by the corporation itself for its own convenience, or for the sake of economy.

6. Where a railroad company seeks to condemn land owned by a water company for the purpose of widening and straightening the line of the railroad, the mere possibility that the land may at some future time become necessary to the exercise of the water company's franchise, will not operate to exempt the land from condemnation; nor will the fact that the property is at present employed, if the use is not necessary to the exercise of the company's franchise.

7. In such a case an order permitting the condemnation will be sustained by the appellate court, where it appears that the order is based upon facts properly found, to the effect that the lands sought to be condemned are not now employed by the water company in the exercise of its franchise; that there are other available sites for reservoirs adequate for the future of the company; and that the improvement will not result in increasing water pollution when once established.

Argued Feb. 24, 1909.  Appeal, No. 8, Jan. T., 1909, by

plaintiff, from decree of C. P. Lackawanna Co., March T., 1907, No. 1, dismissing bill in equity in case of Scranton Gas & Water Company v. Delaware, Lackawanna & Western Railroad Company. Before FELL, BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction. Before NEWCOMB, J. The opinion of the Supreme Court states the case.

*Error assigned* was decree dismissing the bill.

. *James H. Torrey* and *D. T. Watson*, with them *M. J. Martin*, for appellant.—The land was reasonably necessary for the corporate uses of the gas and water company: Keller v. Riverton Water Co., 34 Pa. Superior Ct. 301; In re Providence & Worcester R. R., 17 R. I. 324; Atlanta, Knoxville & Northern Ry. Co. v. Southern Ry. Co., 131 Fed. Repr. 657; Minneapolis, etc., R. R. Co. v. Chicago, Minneapolis & St. Paul R. R. Co., 116 Iowa, 681, 690 (88 N. W. Repr. 1082); Richmond, Frederick & Potomac R. R. Co. v. Johnson, 103 Va. 456 (49 S. E. Repr. 496); Minneapolis Ry. Co. v. Minneapolis & St. Louis Ry. Co., 61 Minn. 502; Contra Costa Ry. Co. v. Moss, 23 Cal. 324.

The location of the additional line of the defendant company through the land in controversy was not necessary for the purposes of that railroad: Penna. R. R. Co.'s App., 93 Pa. 150; Lake Shore, etc., Ry. Co. v. New York, etc., Ry. Co., 8 Fed. Repr. 858; Pittsburg Junction R. R. Co., 122 Pa. 511; Groff's Appeal, 128 Pa. 621; s. c., 144 Pa. 150; Scranton Gas & Water Co. v. Northern Coal & Iron Co., 192 Pa. 80–95.

The proceedings of the defendant, the railroad company, for the condemnation of these lands were not a valid and proper exercise of the power of eminent domain particularly for the purpose covered by the widening and straightening act of 1869: Rocky Glen Water Company v. Scranton Northeastern R. R. Co., 7 Lacka. Legal News, 237; New Brighton & New Castle R. R. Co.'s App., 105 Pa. 13; Williamsport R. R. Co. v. Phila. Co., 141 Pa. 407; Dame's App., 62 Pa. 417;

Pittsburg City v. Kalchthaler, 114 Pa. 547; Penna. Tel. Co. v. Hoover, 209 Pa. 555; Lyon v. Jerome, 26 Wendell (N. Y.), 485; A. & F. R. R. Co. v. R. R. Co., 75 Va. 780.

Statutes authorizing changes in the location of railroads are to be construed strictly: Lake Shore, etc., Ry. Co. v. R. R. Co., 149 Ill. 272 (37 N. E. Repr. 91); Hagner v. Pa., etc., R. R. Co., 154 Pa. 475–478; Beale v. Railroad Co., 86 Pa. 509; Neal v. Railroad Co., 31 Pa. 19; O'Brien v. Railroad Co., 119 Pa. 184; Leverett v. Railroad Co., 96 Ga. 385; Chicago R. R. Co. v. Chicago, 149 Ill. 457; Stewart v. Railroad Co., 14 Ohio, 353.

The minutes of the defendant company at the meeting held May 1, 1906, show that they provided for "the relocating of the present main track between Moscow and Gouldsboro . . . . and for the relocation and building of the line as recommended." Strictly speaking to "locate" a road is to complete it because until it is completed it is not a road: Warner v. Callender, 20 Ohio St. 190, 197.

"Locate" as used with reference to railroads means to put in place: Chicago, etc., R. R. Co. v. Dunbar, 100 Ill. 110.

"Locate" as used in acts relating to bridges is synonymous with "built:" Everett v. Bailey, 150 Pa. 152.

The word "locate" in an agreement with a landowner by a railroad company means a railroad as constructed and laid upon the ground: Hoffman v. Bloomsburg, etc., R. R. Co., 157 Pa. 174; Williams v. Odessa, etc., Railway Co., 7 Del. Ch. 303; Railroad Company v. Brewer, 67 Me. 295; Theberath v. Newark, 57 N. J. Law, 309.

To widen does not import any change of location: Beck v. United Jersey R. R. Co., 39 N. J. L. 45; Leighton v. R. R. Co., 72 N. H. 224.

*John G. Johnson,* with him *Willard, Warren & Knapp,* for appellee.—The land of the Scranton Gas & Water Company here in controversy is not held by it for a public use so that none of it can be used for the construction of a public highway over it: Roaring Creek Water Co. v. Girton, 142 Pa. 92; Spring Brook Water Co. v. Kelly, 17 Pa. Superior Ct. 347;

R. R. Co. v. Water Co., 182 Pa. 418; Lord v. Water Co., 135 Pa. 122; Commonwealth v. Yost, 197 Pa. 171; Lord v. Meadville Water Co., 135 Pa. 122; Philadelphia & Reading R. R. Co. v. Pottsville Water Co., 182 Pa. 418; Standard Plate Glass Co. v. Butler Water Co., 41 W. N. C. 192.

The question of the necessity is vested in the president and managers of the company: Lodge v. R. R. Co., 8 Phila. 345; Tissue v. R. R. Co., 12 Pa. Dist. Rep. 175; Dryden v. R. R. Co., 208 Pa. 316; Bigler v. Canal Co., 177 Pa. 28; Columbia & Port Deposit R. R. Co.'s Petition, 23 Lanc. Law Rev. 396.

The proceedings were valid: Baker v. Johnson, 2 Hill, 342; State v. Proprietors of Morris Aqueduct, 58 N. J. L. 303; Los Angeles v. Pomeroy, 124 Cal. 597 (57 Pac. Repr. 585); Weidenfeld v. R. R. Co., 48 Fed. Repr. 615; R. R. Co. v. Clarion Land Co., 54 Pa. 28; Williamsport R. R. Co. v. Philadelphia R. R. Co., 141 Pa. 407; Johnston v. Callery, 184 Pa. 146.

OPINION BY MR. JUSTICE STEWART, June 22, 1909:

The Delaware, Lackawanna & Western Railroad Company, a corporation of this state, owning and operating a double-track line of railroad, and invested with right of eminent domain, instituted proceedings in the court of Lackawanna county for the condemnation of certain lands owned by the Scranton Gas and Water Company in said county. The latter company, denying the right of the former to appropriate the lands in question, filed its bill for an injunction to restrain the railroad company from entering upon and taking possession of said lands, or laying tracks, or obstructing the gas and water company in any way in their use and occupancy of the same. No preliminary injunction was issued, inasmuch as the railroad company consented to proceed no further with its work until final hearing. Upon final hearing the bill was dismissed without prejudice. From this decree the gas and water company has appealed. The railroad company claims the right to appropriate these lands under and by virtue of the provisions of the Act of March 17, 1869, P. L. 12, which, among other things, authorizes railroad companies "to straighten, widen, deepen, enlarge and otherwise improve the

whole or portion of their lines of railroad . . . . when in the opinion of the board of directors of any such company, the same may be necessary for the better security or safety of persons and property, and increasing the facilities and capacity for the transportation of traffic thereon, and for such purposes to purchase, hold and use or enter upon, take and appropriate lands and material." Except as authority can be derived from this act, it does not exist. The change here proposed involves a departure from the line originally adopted and used since 1854 for a longitudinal distance of about four miles, the greatest departure from the old line at any one point being about 2,500 feet, with the result that the line of railroad will be shortened by a half mile and the total curvature reduced some 323°, with no individual curve exceeding 2°. We do not understand that it is any part of appellant's contention that the railroad company in making so wide a departure from its original location is exceeding its authority under the act, if in point of fact it is being done for the purpose of straightening the tracks, and if the action taken by the company in so ordering the improvement meets the requirements of the law. The contention is that the change attempted by the railroad company was projected and entered upon, not for the purpose of straightening or widening the company's tracks, but with a view to relocate its line; that the action taken by the company contemplated nothing beyond this; and that the fact that a reduced curvature and shortened line will result is but an incident which did not enter into the purpose. The assignments of error are twenty-six in number. These have been resolved in appellant's brief into three distinct questions, clearly and concisely stated, and to them we shall confine the discussion, observing, however, an inverse order.

1. The question first to be considered is thus stated in appellant's brief: "Were the proceedings of the defendant, the Railroad Company, for a condemnation of this land a valid and proper exercise of the power of eminent domain, particularly for the purposes covered by the widening and straightening act of 1869?" One manifest result of the pro-

posed change, unchallenged, will be the straightening of the railroad tracks, and that too to a most marked degree. As we have seen the reduction of total curvature will be from 473° on the present line to 150° on the new. The mere statement of such fact brings the improvement within the provisions of the act of 1869. It is of no consequence that the railroad company had in mind other advantages, or that these were the controlling considerations without which the improvement would not have been entered upon: Windsor Glass Company v. Carnegie Company, 204 Pa. 459; Rudolph v. Schuylkill Railroad Company, 166 Pa. 430; Gaw v. Bristol, etc., R. R. Co., 196 Pa. 442; Oliver v. Thompson's Run Bridge Company, 197 Pa. 344. The inquiry in all such cases must be, not into the conduct of the company, but into the rights conferred upon the company by law. If authorized by its charter to do the thing complained of, the authority of the court is at an end, no matter what latent design may be developed. The facts in regard to the proceeding taken by the railroad company as preliminary to the improvement are undisputed. In 1895 the president of the company caused various surveys to be made. A new alignment being made, the center line was marked on the ground by stakes. The map showing the location made by the engineers was submitted by the president to the executive committee of the company on May 1, 1906. The following is the minute of the action taken by that committee: "The President presented plans and estimates of cost of building new third track and relocating present main track between Moscow and Gouldsboro. On motion it was resolved that the change of alignment proposed and recommended be hereby approved, and authority be given to let the necessary contracts for relocation and building of the line as recommended and the building of a third track from Moscow to Gouldsboro, the total estimated cost of which is about $485,443. Said change will eliminate 320° curvature and shorten the main line 517–1000 of a mile." On May 31 following, at a meeting of the board of directors, this minute of the executive committee was read, and the action of the committee approved. While the specific pur-

pose in view is not declared in either resolution, and while the change in the line is described as a relocation, it is yet evident what the purpose was, and just as evident that what was intended was a change such as is provided for by the act of 1869, and by that act only. The minute of the executive committee's action admits of no other construction than that the plans submitted were approved for the reason that the proposed change would accomplish a reduction in curvature and shorten the main line about a half mile. If it included as well the laying of an additional track, that too was within the provisions of the act, for it would be improving a portion of the line by furnishing increased facilities and capacity for the transportation of traffic thereon. Every apparent purpose the company could have had, could have been accomplished under the provisions of the act of 1869, and there is no reason to doubt the company's good faith. We need not stop to inquire whether the action of the executive committee standing alone would be a sufficient expression of opinion as to the necessity of the proposed change, for it does not stand alone. Final action was taken at a meeting of the board of directors of the company, before legal proceedings to condemn were begun, confirmatory of all that had been done by the executive committee. By their sanction the board of directors made the action of the committee their own. The court finds that the proceedings were entirely regular and adequate, and in this we concur.

2. "Was the location of the additional line of the defendant company through the land in controversy necessary for the purpose of that railroad, not merely convenient or economical or more desirable, but necessary?" Here is introduced an element that can have no place in the inquiry. The location of the line is not a matter to be considered in determining whether a necessity exists for the improvement. A change of line may be necessary to better secure the safety of persons and property and increase the facilities and capacity for the transportation of traffic, and yet there may be no practical way of accomplishing it; the necessity remains all the same. It is the necessity for the purposes indicated in the act that

gives the right; the particular location is a matter to be determined wholly by the party exercising the right. The fact that the land required for the line adopted is corporate property is of no consequence in itself, for corporate property is no more exempt from condemnation than the property of the individual, except as it is impressed with a public use. How far the property here taken is impressed with such public use will be for consideration when we reach the next inquiry. The law commits to the board of directors the determination of the question of the necessity in connection with the proposed change. In this case the board determined that the proposed change is necessary for the purposes indicated in the act, and that is conclusive of the matter: Wilson v. Pittsburg, etc., Railroad Company, 222 Pa. 541. The fact that the board of directors has authorized an expenditure of $400,000 to accomplish the proposed change is substantial evidence that they are acting in good faith. A finding by the court that a necessity existed for the change was not a condition precedent on which the right to make it depended. The act does not intrust to the court any such supervisory power.

3. "Was the land in controversy necessary for the corporate uses, present or future, of the plaintiff, the water company?" If it was, then except as expressed or implied statutory authority for the appropriation of it by the railroad company can be asserted, it may not be taken on the ground of convenience or necessity. The appellant company is also a public service corporation, of no secondary importance whether measured by the character of the service it renders or the number of people it ministers to. It enjoys the right of eminent domain as well. It owns twelve parcels of land lying and adjacent to or close by Roaring Brook, a stream from which it derives the principal water supply for the city of Scranton both for domestic and manufacturing purposes. The railroad traverses the valley of the Roaring Brook and follows closely the line of the stream. The condemnation proceeding contemplates the appropriation of so much of these several parcels as may be necessary for the construction

of the new line, consisting of three tracks. The bill filed in the case complains (1) that all of the lands to be condemned are necessary for the corporate use of the plaintiff, were acquired for such purposes, and are already devoted to public use; (2) that the portion of the land proposed to be taken is necessary and essential to the plaintiff for present and future use for reservoirs for the accumulation and storage of water; (3) that no necessity exists for changing the defendant's line from the southwest side of Roaring Brook where now located to the northeast side so passing through the dam and reservoir sites of the plaintiff company; and that the change of defendant's line if effected will cause pollution of the water in its construction and operation to the detriment of the health of the inhabitants of the city of Scranton. A large amount of testimony was taken in the case covering not only the present situation with respect to these lands, the uses to which they are now put and their importance in that connection, but the probability of future requirements of the water company in connection therewith. There can be no ground for controversy with respect to the six parcels. It is admitted that the appellant acquired ownership of these subsequent to the railroad company's appropriation. When so acquired these parcels were already impressed with a public use—the defendant's right of way having attached—which could not be interfered with by mere purchase of the property. The remaining parcels had long been the property of the appellant company, and, if devoted to public use and essential to the business of the water company, nothing short of express authority or one arising by necessary implication could justify their appropriation by another corporation. Property devoted to public use, including franchise, is subject to eminent domain, and may be taken for other uses; but it is equally settled that it cannot be taken without legislative authority expressed in clear terms, or by necessary implication: Groff's Appeal, 128 Pa. 621. On the other hand, in the absence of some statutory provision expressly or by implication forbidding it, property devoted to one public use may under general statutory authority be taken for another

public use, when the taking will not materially impair or interfere with or is not inconsistent with the use already existing, and is not detrimental to the public: In re Rochester Water Commissioners, 66 N. Y. 413. In either case there must exist a necessity for the taking, and this necessity, as was said in Penna. Railroad Company's Appeal, 93 Pa. 150, must be one that arises from the nature of things, over which the corporation has no control; it must not be a necessity created by the corporation itself for its own convenience or for the sake of economy. It is to be observed that these principles apply only where a franchise or public use is attempted to be brought under condemnation; they have no application where the property which belongs to a corporation is not in actual use or essential to the exercise of the corporate franchise. The railroad company does not assert anything but general statutory authority to condemn; its right therefore depends in no sense upon its own necessity, but wholly upon what may be the necessities of the water company in connection with the lands which the former seeks to appropriate. The real question in the case is, were those parcels devoted to public use by the appellant, and are they essential to the exercise of its franchise? If not, they stand on the same footing as lands owned by a private individual, and the question of necessity, so far as regards the railroad company, is not in the case. In determining this main question liberal consideration must be paid to the future as well as the existing needs of the water company; but the mere possibility that the land may at some future time become necessary to the exercise of the company's franchise will not operate to exempt them from condemnation; nor will the fact that the property is at present employed, if the use is not necessary to the exercise of the company's franchise. It is not contended that when the proceedings in condemnation were begun the lands in question were devoted to public use in the sense that they were actually employed in such use. No established reservoirs or storage plants are within the condemnation. All that is asserted is that the lands were purchased and are being held with a view

to their future employment in this way; that if not now essential they are sure to become so by reason of the rapidly increasing demands upon the water company. The learned judge who heard the case found adversely to the appellant's contention. His twenty-third finding is as follows: "No action appears to have been taken by the Directors of the Water company devoting any of the lands in question to public use. Those on which parcels 1, 2, 3, 4, 5 and 6 are located are believed to have been bought by plaintiff for some purpose connected with the control of the water shed and with an indefinite view on part of Mr. Scranton to the possible location of reservoirs at some future time. Whether the intervening lands acquired last December were bought with the intention of ultimately locating reservoirs there is, under the circumstances, doubtful. The President, who is the owner of ninety per cent of the stock, disclaims definite intention at present but declares his purpose to locate one or more reservoirs there whenever the city shows that more storage is required." His twenty-fifth finding is, "There appears to be no ground for the conclusion that the proposed railroad improvement will seriously interfere with the construction of all such reservoirs as the water supply will warrant . . . . hence the lands in question are not essential to the due performance of the water company's function as required by its charter." . So too with respect to the complaint that pollution of the water will result from the proposed change. The finding with respect to this is, "13th. The alleged danger of pollution during the period of construction is undisputed and is found to be a fact. But as between the new alignment and the addition of a new track along the old line, such danger is not found to differ appreciably in degree in the one case from the other."

These were the controlling questions in the case. The court finds distinctly that the lands sought to be condemned are not now employed by the water company in the exercise of its franchise; that there are other available sites for reservoirs adequate for the future of the company, and that the improvement by the railroad company will not result in in-

creasing water pollution when once established. Were the findings sustained by the evidence? We may concede that the case is in some respects disputable on its facts; but we are far from convinced that the learned judge has erred in any of his conclusions. Indeed, a full and careful examination of the evidence in the light of the exceptions taken has not only satisfied us that his findings are well supported, but has inclined us strongly to a concurrence therein. This is more than enough, since it is our settled rule to disturb the findings of a chancellor only as manifest error·is shown. The law of the case was correctly applied by the learned judge, and the decree entered saves to the plaintiff the right to renew its application should pollution of the water by reason of the change of the railroad become a menace. In view of the findings and the law the appellant could ask for no more.

The assignments of error are overruled, and the appeal is dismissed at the costs of appellant.