# Beaver Borough v. Cleveland & Pittsburgh R. R. Co. et al.

*Railroads—Eminent domain—Right of way—Widening—Condemnation of other public land—Necessity—Act of March 17, 1869.*

1. Under the Act of March 17, 1869, P. L. 12, a railroad company cannot condemn for sidings land adjoining its right of way and belonging to a borough for public use, unless there is an absolute necessity for such use.

2. Such necessity must be one that arises from the nature of things and not one created by the railroad company itself, or for its own convenience, or for the sake of economy.

3. The courts will not permit the taking if it appears that the right of way already owned by the company is of sufficient width to enable its present tracks to be relocated and the new sidings constructed.

*Evidence—Ancient document—Agreement as to railroad right of way—Signatures—Competency of witness.*

4. An unrecorded instrument relating to a railroad company's right of way, found among the company's files, bearing a date seventy-two years before the trial and bearing physical indications of great age, is properly received in evidence as an ancient document.

5. A member of a borough council is competent to prove the signature of a deceased burgess to an ancient official document where it appears that he had acquired knowledge of such signature by having seen it appended to official documents and papers in the possession of the borough.

Bill in equity for injunction. C. P. Beaver Co., June T., 1925, No. 2.

*Charles H. Stone* and *R. S. Holt,* for plaintiff.

*W. A. McConnel,* for defendants.

BALDWIN, P. J., May 26, 1925.—By the Act of April 8, 1850, P. L. 417, the Cleveland & Pittsburgh Railroad Company, incorporated by an act of the State of Ohio, was authorized "to extend their railroad, with one or more tracks, from the eastern line of the State of Ohio up the valley of the Ohio River, to a point at or near the mouth of the Big Beaver and connect the same with the Ohio & Pennsylvania Railroad." By the Act of April 18, 1853, P. L. 473, the Cleveland & Pittsburgh Railroad Company was incorporated in Pennsylvania, and, *inter alia,* was vested with the right "to construct a double or single railroad or way from Cleveland, in the County of Cuyahoga, on the most direct and least expensive route, to some point in the direction of Pittsburgh, on the state line from Ohio and Pennsylvania or on the Ohio River; . . ." and the president and directors of said company were invested in Pennsylvania "with all rights and powers necessary for the location, construction and repair of said road, not exceeding one hundred feet wide, with as many sets of tracks as the said president and directors may deem necessary, and

they may cause to be made contract with others for making the said railroad, or any part of it, and they or their agents, or those with whom they may contract for making any part of the same, may enter upon and use and excavate any land which may be wanted for the site of said road, or for any other purpose necessary and useful in the construction or in the repair of said road or its works."

Pursuant to this legislation, the Cleveland & Pittsburgh Railroad Company built its road from the Ohio line along the north bank of the Ohio River and connected it at Rochester with the line of the Ohio & Pennsylvania Railroad Company. Its location through the town of Beaver was in part along and across a tract of land between the lots of the town proper and the Ohio River, and bounded on the east by a lot known as the David Minis lot. This tract of land was made public property by the Act of Jan. 29, 1850, P. L. 24, which provided as follows: "That all the narrow strip of ground below the lot of David Minis and between the River Ohio and the lots of the town of Beaver, as laid off by Daniel Leet, deputy surveyor, . . . shall be and is hereby declared to be the public property of the Borough of Beaver, in the County of Beaver, and its successors, for the use and benefit of all the citizens thereof forever, as a common thoroughfare, landing and means of access to and from the said river; and that the burgess and town council of the said borough, and their successors, shall be and are hereby authorized to improve the same for the use and benefit of the citizens thereof, in such manner as to them may appear reasonable and proper, by leveling, grading, wharfing, making roads, places of landing and otherwise, and to extend their wharves, landing places or other erections for convenient access to and from the said river, out into the stream of the same as far as shall be necessary for said purposes, as well, also, as for the purpose of securing a good harbor for the use of said borough.",

If municipal consent was necessary before the railroad company could lawfully occupy any of this strip of land, the same was granted by an instrument in writing in the form of a deed, executed by the officers of Beaver Borough and conveying to the Cleveland & Pittsburgh Railroad Company a piece of land "Extending along the entire front of the said Borough of Beaver on the Ohio River and being one hundred feet in width where the said Cleveland & Pittsburgh Railroad is now located near the base of the hill."

We are satisfied that the paper was properly received in evidence. The testimony is that it was produced from the files of the Cleveland & Pittsburgh Railroad Company; it bears date of Aug. 5, 1853, and on its face bears the physical indications of being an ancient document. If it were not for the fact that the paper bears on its face the evidence of some erasures, it would probably be receivable in evidence as an ancient document without proof of its execution. There is, however, competent and convincing proof of its execution.

It appears from the testimony of the secretary of the town council that the minutes of the town council prior to May 2, 1893, have been lost; also the record of ordinances antedating April 28, 1867; and that there is no record in the possession of the secretary showing who the officers of the borough were in 1853. But it appears by the testimony of J. H. Cunningham, Esq., a member of this Bar, and for many years a member of the Town Council of the Borough of Beaver, that James Allison was at one time burgess of the borough, and one O. Cunningham, president of its town council. Mr. Cunningham also testified that he was familiar with the signatures of said James Allison and O. Cunningham, and that the signatures purporting to be those of "James Allison" as burgess and "O. Cunningham" as "Pres. of Council," attached to the paper in question, were, in his opinion, the signatures of these

men. There cannot be any question whatever as to the competency of Mr. Cunningham to testify to the signature of James Allison, and as to the signature of O. Cunningham, we think the witness was qualified by reason of the fact that he acquired a knowledge of such signature by having seen it appended to official documents and papers in the possession of the Borough of Beaver, including such papers as old minutes of the borough which have apparently been lost: 1 Wigmore, 704; Greenleaf, §§ 21 and 578.

The agreement or "deed," it will be noted, does not describe the right of way by metes and bounds; it is merely described as "one hundred feet in width where the said Cleveland & Pittsburgh Railroad is now located near the base of the hill." The evidence shows, however, that prior to 1902 the railroad company set right of way posts on the ground, marking the southerly and northerly limits of its land. The evidence also shows that both the Borough of Beaver and the railroad company have recognized both lines of this 100-foot strip as thus marked on the ground. The railroad company has for many years last past kept the weeds and grass cleaned from its tracks northwardly to the northerly line of its right of way, and its police officers have kept trespassers off the same. The borough authorities have kept the weeds and grass on the hillside cleared off northwardly of the line of the right of way posts. It is also in evidence that in 1898 the borough built the pumping station for its water-plant on this public land at a point just east of the railroad station. At that time the engineers of the railroad company staked off the southerly line of its right of way at this point; whereupon the borough, in erecting its pumping-plant, kept twelve feet southwardly of this line. So that there is abundant evidence of a location 100 feet in width in a particular place recognized by both parties.

The railroad company's charter gave it the power, in the location and construction of its road, to "enter upon and use and excavate any land which may be wanted for the site of said road." And the phrase "any land," as used in this very charter, received a construction by the Supreme Court in Cleveland & Pittsburgh R. R. Co. *v.* Speer, 56 Pa. 325; in this case it was held that the railroad company had power to enter upon and occupy a public highway in a borough. This case referred approvingly to the broad meaning given to the word "land" in Brocket *v.* Ohio & Pennsylvania R. R. Co., 14 Pa. 241, wherein Chief Justice Gibson, speaking for the court, said (page 243) : "The jurisprudence of the enacting states is based upon the common law of England, whose rules of interpretation are our rules, and it is text-book law, that terms of art in a statute or a deed are to be taken in their technical sense, because they have a definite meaning, which is supposed to have been understood by those who were, or ought to have been, learned in the law. In England, every act of Parliament, as well as every conveyance, is drawn by counsel. The word land, both there and here, is a term of art, and the most comprehensive one that could be applied to the subject of a grant. Lord Coke says that it is *nomen generalissimum;* that it includes every thing fixed to the ground and everything above or below the surface of it; that it comprehends castles, houses and other buildings; and that, not only the soil, but everything in it or on it passes by it."

In view of these expressions of the Supreme Court, and with the added fact of municipal consent, we entertain no doubt that the Cleveland & Pittsburgh Railroad Company has a right of way 100 feet in width over and along the land in question. It is, however, not a movable or shifting right of way, but is upon the very location marked by the right of way posts placed there by the Cleveland & Pittsburgh Railroad Company many years ago.

Beaver Borough *v.* Cleveland & Pittsburgh R. R. Co. et al.

We now reach the question whether or not the railroad company may go outside of this 100-foot right of way in order to make its contemplated improvements. Counsel for the company claims that this right exists under the Widening and Straightening Act of March 17, 1869, P. L. 12. We will assume that the necessity for the two side-tracks proposed to be built actually exists. The action of the board of directors of the lessee company settled that; this court could not determine otherwise, for no abuse has been shown of the discretion lodged in the president and board of directors of the company. But in order to satisfy such necessity, the railroad may not enter upon this public land merely because it is more convenient to do so and less expensive. By legislation which antedates all the legislation under which the railroad company claims, this land was declared to be "the public property of the Borough of Beaver, . . . for the use and benefit of all the citizens forever, as a common thoroughfare, landing and means of access to and from the said river." While it is true that, in the absence of some statutory provision expressly or by implication forbidding it, property devoted to one public use may, under general statutory authority, be taken for another public use, yet there must be a necessity for the taking, and this necessity must be one that arises from the nature of things and over which the taking authority has no control: "It must not be a necessity created by the corporation itself or for its own convenience or for the sake of economy." We have quoted from the opinion of the Supreme Court in Gas and Water Co. *v.* Delaware, Lackawanna & Western R. R. Co., 225 Pa. 152, construing the Act of March 17, 1869, P. L. 12. To the same effect are Pennsylvania R. R. Co.'s Appeal, 93 Pa. 150, and Hoffman *v.* S. River & W. R. R. Co., 43 Pa. Superior Ct. 19.

In the case at bar it is perfectly clear that the 100-foot right of way already owned by the railroad company is of sufficient width to enable its present tracks to be relocated and the new sidings constructed. It is true that it would be less convenient, as well as less expensive, to use the land it now has, but with this we are not concerned. We are not called upon here to decide whether or not, under any circumstances conceivable, the land in question could be taken under the Act of 1869. All that we are called upon to decide, and all that we do decide, is, that there now exists no such compelling necessity to such occupation as the law contemplates. The land in question is the only land suitable for wharf purposes and for access to the river available to the people of Beaver and the public generally. Regardless of past or present use for these purposes, the potential value of the land for such uses is undeniably great.

The present injunction should, therefore, be continued, in so far as it enjoins the defendant from constructing its tracks and other works on and over the land in question beyond the limits of its present right of way; in so far as the injunction prohibits the construction of tracks on and over its said right of way, it should be dissolved.

And now, May 26, 1925, upon consideration of the foregoing cause, it is ordered, adjudged and decreed as follows: That the preliminary injunction heretofore granted is continued to final hearing, in so far as it enjoins the defendants, their officers, agents and employees, from constructing tracks or other works over or upon any part of the said public land of the Borough of Beaver outside the limits of its present right of way, as indicated by stakes upon the ground and as shown on plaintiff's map, Exhibit No. 2; in so far as said injunction prohibits the defendants, their officers, agents and employees, from any construction upon the said right of way, it is dissolved.

From F. H. Laird, Beaver, Pa.