# Laureldale Cemetery Co., Appellant, *v.* Reading Co.

*Railroads—Straightening and widening lines—Cemetery—Act of March 17, 1869, P. L. 12.*

1. The Act of March 17, 1869, P. L. 12, authorizing the straightening, widening and otherwise improving lines of railroads, does not mean that the power to straighten contemplates merely the construction of new tracks in close proximity to old ones, and only for the purpose of eliminating sharp curves.

2. To straighten implies departure from the original line, the extent of which must necessarily depend on the necessities created by local conditions.

3. A cemetery company cannot resist the condemnation of a part of its land by a railway company under the Act of 1869, for the construction of new tracks for widening and straightening purposes, although there may be a deviation from the old line for a distance of nearly five miles, where the new tracks will straighten the line for through traffic, save heavy grades, avoid grade crossings, and generally secure the safety of persons and property.

4. A cemetery company cannot resist condemnation proceedings by a railroad company for widening purposes on the ground that its land is impressed with an earlier public use, where it appears that the cemetery company is a private corporation with full power to sell or dispose of its property not already used for burial purposes, and that the land sought to be condemned was not at the time devoted to such use.

Argued January 25, 1927. Before MOSCHZISKER, C. J. FRAZER, WALLING, KEPHART and SCHAFFER, JJ.

Appeal, No. 76, Jan. T., 1927, by plaintiff, from decree of C. P. Berks Co., sitting in equity, No. 1412, Equity Docket 1924, dismissing bill in equity, in case of Laureldale Cemetery Co. v. Reading Company.  Affirmed.

Bill for injunction. Before SCHAEFFER, P. J.
The opinion of the Supreme Court states the facts.
Bill dismissed. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Wellington M. Bertolet,* for appellant.—Defendant
railroad company, having already built its railroad, is
without power under the right of eminent domain,
granted by the Act of March 17, 1869, P. L. 12, to ap-
propriate a part of a burial-ground for a new right-
of-way which deflects almost five miles from its original
lines: Penna. R. R. Co.'s App., 93 Pa. 150; Dryden v.
Ry. Co., 208 Pa. 316; Hoffman v. R. R., 43 Pa. Superior
Ct. 19.

The "straightening" contemplated has reference to
the elimination of curvature: Scranton Gas & Water
Co. v. R. R., 225 Pa. 152; Hoffman v. R. R., 43 Pa.
Superior Ct. 19.

*Thomas J. Snyder,* of *Snyder, Zieber & Snyder,* for
appellee.—The proposed appropriation of appellant's
land is for purposes within the purview of the Act of
March 17, 1869, P. L. 12 and the circumstance that
such land may be deemed part of a burial ground does
not exempt it from such appropriation: Hurt v. Can-
neries Co., 263 Pa. 238; Dryden v. R. R., 208 Pa. 316;
Snyder v. R. R., 210 Pa. 500; Wilson v. R. R., 222 Pa.
541; Bierly v. R. R., 225 Pa. 182; Norris v. R. R., 278
Pa. 549; Scranton G. & W. Co. v. R. R., 225 Pa. 152.

Assuming the legal right in a railroad company to
exercise the power of eminent domain for a specified
purpose, it is not within the province of the courts to
pass upon the necessity for any particular appropri-
ation incident to the accomplishment of that purpose:
Parke's App., 64 Pa. 137; Struthers v. Ry., 87 Pa. 282;
Scranton G. & W. Co. v. R. R., 225 Pa. 152; McDonald
v. Cemetery Co., 226 Pa. 77.

The particular land of appellant through which appellee's proposed low-grade cut-off is located is not a "burying ground" as that term is used in the limitation imposed upon appellee's right of eminent domain vested in it under its power to construct lateral railroads or branches: Application of N. B. & N. C. R. R., 30 Pitts. L. J. 22; McDonald v. Cemetery Co., 226 Pa. 77.

OPINION BY MR. JUSTICE FRAZER, March 14, 1927:

Defendant operates a railroad extending from Harrisburg to Reading and continuing through the latter city to Allentown and distant points. The tracks in the City of Reading are located at grade and the large volume of freight carried between Harrisburg and Allentown and points beyond these cities, causes excessive congestion and unduly delays traffic in passing through Reading, because of the necessity of such traffic to cross defendant's main line tracks in that city by means of cross-over switches. There are also delays incident to a heavy grade immediately north of the city, requiring the splitting of freight trains or the use of additional motive power.

To relieve the congestion in the city of Reading, and also void the necessity of crossing the main line at grade in that city, and the delays incident to the steep gradient outside the city, defendant decided to enlarge and improve its railway by the construction of a cut-off line, eleven miles in length forming a direct connection between its main line at Sinking Spring Station, west of the city, and a point near Blandon Station, north of the city, the proposed cut-off making the hypothenuse of a triangle formed by the tracks entering the city from the west and passing out in a northerly direction. At the widest part of the triangle, the greatest distance between the old and the proposed new tracks is approximately five miles. By this route, through traffic will avoid the city, the grade crossing of the main tracks, and eliminate the steep grade referred to above.

In choosing this route, defendant's board of directors adopted a resolution declaring it "necessary, for better securing the safety of passengers and property and increasing the facilities and capacity for the transportation of traffic, to straighten, widen, enlarge and improve the line of its railroad by the construction of additional tracks, between Sinking Springs and Blandon in the County of Berks, in the State of Pennsylvania, and also deem, it advantageous and suited to promote the convenience of the inhabitants of said county and the interests of said company to locate and make a railroad leading from the main line of its railroad at or near Sinking Springs to a point at or near Blandon."

The proposed line, as located, passes through a tract of land containing over 100 acres, held and owned by the plaintiff for cemetery purposes.  Because the land is so held, plaintiff by its bill seeks to enjoin defendant from condemning that portion of its property included in the proposed right of way, alleging defendant is without legal right to appropriate plaintiff's land for the purposes stated.  The court below decided the proceeding to be within the powers conferred on defendant by the Act of March 17, 1869, P. L. 12, authorizing the straightening, widening and otherwise improving of lines of railroads and dismissed the bill. The court below found that "To provide additional tracks required to relieve the existing congested trackage and facilities of defendant's said line of railroad in and through the City of Reading, by constructing them immediately contiguous to the existing line is impracticable, not only because of great cost in the way of damages to manufacturing and other improved properties and dwelling houses at present located along the line in the City of Reading, but also because such additional tracks, in such case, would be subject to the same heavy grades as the existing line and the present interference in the handling of traffic by reason of the necessity of crossing the company's main line at grade

would in no way be obviated or lessened but actually increased.

"The only feasible and practical method of widening, enlarging and improving the existing congested trackage and facilities of the defendant's line of railroad, is to construct the additional tracks required between a point on the Lebanon Valley Branch of the defendant's line west of Reading and a point on the East Pennsylvania branch of defendant's line east of Reading, in the form of a low grade cut-off for through traffic, thus avoiding the existing congestion in the City of Reading, the crossing of the defendant's main line tracks at grade, and the heavy grade now existing on the East Pennsylvania branch of the defendant's line just east of Reading.

"The construction of the required additional tracks in such manner and form will result in materially lower gradients for such additional tracks, thereby rendering possible the moving of full heavy trains eastward under the power of single locomotives, without either division of such trains into sections or the help of additional locomotives, and will result in the avoidance of the necessity of crossing with them defendant's main line tracks at grade, and will also effect a material shortening and straightening of defendant's line of railroad for through traffic."

We find no material dispute as to the above findings of fact, the argument on behalf of plaintiff being based on the allegation that defendant is without authority under the Act of 1869, to condemn plaintiff's property for the new right-of-way, which deflects almost five miles from the existing roadbed.

The act in question confers on the railroad companies the right "to straighten, widen, deepen, enlarge and otherwise improve the whole portions of their lines of railroads......whenever, in the opinion of the board of directors of any such company, the same may be necessary for the better securing the safety of persons

and property, and increasing the facilities and capacity
for the transportation of traffic thereon, and for such
purposes to purchase, hold and use or enter upon, take
and appropriate land and material." It cannot be denied
that the new route will straighten the existing line for
through traffic, and will also better secure the safety
of persons and property, and increase the facilities and
capacity for transportation of traffic on this portion
of defendant's lines. It is contended, however, that the
power to straighten contemplates merely the construc-
tion of new tracks in close proximity to old ones, and
only for the purpose of eliminating sharp curves, etc.,
and that to permit a deviation from the old line, for
a distance of nearly five miles, is practically to construct
a new line which was not contemplated by the Act of
1869.

The language of the Act does not warrant such nar-
row construction. It was passed to enable railroads
to make such changes in their roadbed as the increase
of traffic and the growth of communities might reason-
ably require. To straighten implies departure from the
original line, the extent of which must necessarily de-
pend on the necessities created by local conditions. A
mere widening of the existing roadbed through the
City of Reading would not eliminate the main objection-
able features but on the contrary would increase the
dangers incident to the grade crossing, and circumvent
one of the purposes of the act, which is to better secure
the safety of persons and property of those having oc-
casion to cross defendant's railroad: Bigler v. Penna.
Canal Co., 177 Pa. 28, 34. In Scranton Gas and Water
Company v. D., L. & W. R. R., 225 Pa. 152, an appropri-
ation of land for the purpose of straightening the road
over a route four miles in length and where there was
a departure of half a mile from the original roadbed,
was held proper. While it must be conceded a railroad
may not construct a new line under the guise of straight-
ening the old one, the good faith and purpose of de-

fendant are not questioned here, nor is it disputed that the route chosen is a proper one from an engineering standpoint.

The special act incorporating defendant company, as well as the General Railroad Acts of February 19, 1849, P. L. 79, and April 4, 1868, P. L. 62, both contain the limitation on defendant's power of eminent domain that it shall not, in constructing its road, pass through any burying ground, place of public worship or dwelling house without the consent of the owner.

The Act of 1869 does not contain the exception found in the earlier acts, and it has accordingly been held that a railroad may, for the purpose of widening or straightening its road under that Act, condemn a dwelling house in the occupancy of the owner: Dryden v. Pittsburgh, Virginia & Charleston Railway, 208 Pa. 316; Snyder v. B. & O. R. R., 210 Pa. 500; Bierly v. Phila. & Erie R. R., 225 Pa. 182; Norris v. Pittsburgh, B. & L. E. R. R., 278 Pa. 549. We deem unnecessary consideration to what extent land impressed with an earlier public use may be condemned under eminent domain proceedings, inasmuch as plaintiff is a private corporation with full power to sell or otherwise dispose of any part of its property, not already conveyed for burial purposes, especially as it appears the land appropriated for the right of way in question has not at the present time been devoted to such purposes, nor does its appropriation interfere with the use of the remainder of the cemetery property for the purpose intended. Plaintiff consequently stands in the same position as any other private owner of property: Scranton Gas & Water Co. v. D., L. & W. R. R., 225 Pa. 152, 163.

The decree of the Court below is affirmed at appellant's costs.